JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

COLLEGESOURCE, INC., a California corporation

## DEFENDANTS

ACADEMYONE, INC., a Pennsylvania corporation and DAVID K. MOLDOFF, an individual

**(b)** County of Residence of First Listed Plaintiff  San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Chester County, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Conrad O'Brien, P.C., 1515 Market Street, 16th Floor, Philadelphia, PA, 19102 (215-864-9600

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 USC §1964; 18 USC §1030; 15 USC §1125(a)

Brief description of cause:
Racketeering Activity, Computer Fraud and Trademark violation arising from misappropriation of

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE  Padova

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:   U.S. Civil Statute: 47 USC 553
                                        Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| COLLEGESOURCE, INC., A California corporation | : | CIVIL ACTION |
| v. | : | |
| ACADEMYONE, INC., a Pennsylvania corporation, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.       (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.       (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)       (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       (XX)


| | | |
|---|---|---|
| Date | Attorney-at-law | Attorney for |

| | | |
|---|---|---|
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __8090 Engineer Road, San Diego, CA 92111__

Address of Defendant: __601 Willowbrook Lane, West Chester, PA 19382__

Place of Accident, Incident or Transaction: __Theft of electronically filed records belonging to plaintiff in__
*(Use Reverse Side For Additional Space)*
__San Diego, CA and conversion of stolen property in West Chester, PA.__

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes ☐  No ☒

Does this case involve multidistrict litigation possibilities?  Yes ☐  No ☒

*RELATED CASE IF ANY:*
Case Number: __CA-08-5707__   Judge __Padova__   Date Terminated: __3/17/2010 (Bill of Costs still pending)__

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes ☒  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes ☒  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

    Yes ☐  No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Racketerring and Corrupt Organizations, Computer Fraud and Abuse, Trademark

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*
I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: _____   _____   _____
Attorney-at-Law                                    Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
Attorney-at-Law                                    Attorney I.D.#

CIV. 609 (6/08)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLEGESOURCE, INC., a California corporation, | : : : | CIVIL ACTION |
| | : | NO. _____ |
| Plaintiff, | : : | |
| | : | **VERIFIED COMPLAINT:** |
| v. | : : | **1. Violation of U.S. Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1964);** |
| ACADEMYONE, INC., a Pennsylvania corporation, and DAVID K. MOLDOFF, an individual, | : : : | **2. Violation of U.S. Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1964);** |
| Defendants. | : : | |

**3. Violation of U.S Computer Fraud and Abuse Act (18 U.S.C. §1030);**

**4. Breach of Contract;**

**5. Unjust Enrichment**

**6. Trademark Infringement under U.S. Lanham Act (15 U.S.C. §1114);**

**7. Unfair Competition under U.S. Lanham Act (15 U.S.C. §1125(a));**

**8. False Advertising under U.S. Lanham Act (15 U.S.C. §1125(a));**

**9. Declaration of Trademark Invalidity Due to Fraud on U.S.P.T.O.**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff CollegeSource, Inc. brings this civil action against defendants AcademyOne, Inc. and David K. Moldoff, and, in support thereof, alleges as follows:

## JURISDICTION AND VENUE

1.      This Complaint arises under the United States Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§1961 et. seq.), the United States Computer Fraud and Abuse Act (18 U.S.C. §1030), the trademark and unfair competition laws of the United States (15 U.S.C. §§1051, et. seq.), declaratory judgment laws of the United States (28 U.S.C. §§2201, et. seq.), and contract law.

2.      This Court has federal question jurisdiction over this matter pursuant to 15 U.S.C. §1121 (Lanham Act), 18 U.S.C. §1964 (civil RICO claims) and 28 U.S.C. §1331.  This Court has supplemental jurisdiction over the cause of action herein for breach of contract pursuant to 28 U.S.C. §1367(a).

3.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).  Plaintiff and defendants are citizens of different states and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4.      This Court has personal jurisdiction over defendants and venue is proper in this District because, *inter alia*, defendants reside in this District, performed some of the wrongful acts alleged herein in this District (as well as the Southern District of California) and/or conduct business in this District on a systematic and continuous basis.

## THE PARTIES

5.      Plaintiff CollegeSource, Inc. (**"CollegeSource"**) is a California corporation with its principal place of business in San Diego, California.  CollegeSource is the successor in interest to the Career Guidance Foundation (**"CGF"**), which was founded in 1971.  CollegeSource provides

the public with information and data services related to college and university catalogs,

curriculums, course descriptions, course equivalencies and course transferability.

6.     Defendant AcademyOne, Inc. ("**AcademyOne**") is a Pennsylvania corporation with

its principal place of business at 601 Willowbrook Lane, West Chester, Pennsylvania 19382.

AcademyOne is a junior competitor of CollegeSource.

7.     Defendant David K. Moldoff ("**Moldoff**") is an individual residing at Johnny's

Way in West Chester, Pennsylvania.  Moldoff is President and C.E.O. of defendant AcademyOne.

On information and belief, defendant Moldoff is the founder of AcademyOne.

## BACKGROUND

### Career Guidance Foundation & CollegeSource, Inc.

8.     CGF was founded in 1971 to support career guidance and planning in the

educational system by providing a complete collection of college catalogs on/in the best

dissemination media then available.  CGF operated as an IRC §501 (c)(3) non-profit organization,

and generally did not charge its clients anything or only charged them enough to cover its

expenses.  Funding for CGF came from Mr. Harry G. Cooper ("**Cooper**").  Over its thirty-three

(33) year existence, CGF's shortfall funding came soley from Cooper or loans guaranteed by

Cooper.

9.     Before CGF was founded, libraries and admissions offices were heavily burdened

by the need to keep thousands of paper college catalogs in order to provide information to

matriculating college students, determine transfer equivalencies, and provide admissions and

transfer advice.  Paper catalogs were required for each institution and each year in which potential

transfer students might have taken classes.  A typical year's worth of paper catalogs would fill a

bookshelf seven (7) feet tall and 23 feet long.  Most universities maintained 15 to 25 years' worth

of catalogs.

10.     CGF revolutionized the college catalog industry by making information and data available on microfiche that could be stored in far less physical space. On microfiche, a library could store one (1) year's worth of catalogs in a shoe-box.

11.     Considerable work was required to convert a catalog from paper format into microfiche. First, the catalog had to be acquired from the educational institution with permission to make reproductions. Then, each page of the catalog had to be precisely cut out with a razor. Each catalog page was then positioned for microfiching along with four hundred ninety-four (494) other pages, to make four hundred ninety-five (495) pages per fiche. Next, each fiche was made into a master copy. The master copy was then duplicated.

12.     It is estimated that CGF saved the educational community over $40 million per year in storage and acquisition costs.

**CollegeSource's Digitized Information**

13.     With the advance in computer technology in the 1990's, CGF began digitizing catalogs and course information. Digitized catalogs and information did not require nearly as much physical storage space as microfiche, let alone paper. Electronically stored information also had the potential advantage of allowing word searches, copying and pasting - a very helpful feature in light of the size of some of the catalogs. A year's worth of college catalogs could now fit on six (6) compact discs.

14.     In the early 1990's, colleges and most publishers were still publishing in the traditional way, printed galley proofs. Page-setting software, such as Quark Express, Pagemaker and ProPage, was years off. Adobe Reader even farther away.

15.     Digitizing printed catalogs and course information presented additional hurdles that

microfiching did not.  While razoring the individual pages from each catalog was still required,

each page had to be converted into a digital format that allowed a computer to read the individual

letters and words on the page.  This process is known as Optical Character Recognition (**"OCR"**).

CGF devoted significant research and development costs working with software companies, such

as Microsoft, Adobe and OmniPage, to develop more efficient OCR techniques.

16.     OCR'd documents are useless without a way to "view" them, just as Internet

documents are a meaningless stream of characters (HTML Language) without a "viewer," such as

Internet Explorer or Netscape.  CGF wrote the specifications for Microsoft's very first "viewer" of

OCR'd documents, which was called Multi-Media Viewer.  Eventually, Adobe's "Portable

Document Format" (.PDF) became the dominant format.

17.     Despite the advent of more efficient OCR techniques, quality control on CGF's

digitized catalogs and course information was crucial.  Even a one-percent (1%) error rate would

result in ten (10) errors and unsearchable words on a one-thousand (1,000) word page, and

thousands of unsearchable words per catalog.  CGF's targeted error rate after detailed quality

control was 0.005%.

18.     The vast majority of CollegeSource's  digitized catalogs and course information are

the result of scanning and the OCR process.

19.     While current *whole* catalogs are valuable, older "legacy" catalogs are valuable as

well, due to the need to determine equivalencies for students that are seeking to apply credits from

older course-work.  For example, a student returning from years of absence (such a veteran

returning from deployment) may seek to apply his/her prior course-work from one institution

towards a degree credit  at another institution.

20.     Recently, some colleges have started to provide their catalogs and course

descriptions in digital form. Nevertheless, in many cases, CollegeSource is required to convert all files from their native format to Adobe PDF format. CollegeSource also must decide whether or not to include any pictures, replace them with blank boxes or degrade the pictures (for optimal downloading speed). CollegeSource also bookmarks/links the catalog for better look-up efficiency in its final product.

21.     Over the past sixteen (16) years, CollegeSource has accumulated over 53,239 digital *whole* catalogs, 44,700,000 digital course records (including course descriptions, credits, names and prerequisites) and course equivalencies (the **"Digitized Information"**). The Digitized Information includes, but is not limited to, CollegeSource's digitized *whole* catalogs and the digitized course descriptions therefrom.

22.     CollegeSource's comprehensive database of Digitized Information has significant commercial value to businesses in the college transfer and information industries. CollegeSource has invested approximately $10,000,000.00 in its Digitized Information.

23.     As universities and the general public became more familiar with digital searching on the Internet, college administrators and registrars began to request digitized sub-catalogs, such as course descriptions (and their related data). Administrators desired digitized sub-catalogs to assist them with transferring course credits, which is known as "course articulation." Such systems were well documented in the literature, though not yet computerized (See, *Improving Articulation and Transfer Relationships (new directions for community colleges )* by Frederick C. Kintzer (Paperback - Sept. 1982)). In 2004 CGF, now CollegeSource, began development of a digitized course articulation system.

24.     Because of its previous time consuming and expensive efforts in creating and compiling the Digitized Information, CollegeSource was able to respond with alacrity to the

emerging demand for an online database of course information only (name, credit hours, description *etc.*).  CollegeSource called its nacent digitized course articulation system the "Transfer Evaluation Service" or **"TES."**

25.     Because of its previous, time consuming and expensive efforts in creating a collection of digitized catalogs, CollegeSource was able to "cut and paste" course descriptions from its existing whole digital catalog database into its new TES database.  Nevertheless, as with moving its collection of digitized catalogs from data CDs to the Internet, CollegeSource expended significant time and money to move its collection of over 53,239 digitized college catalogs into over 44,700,000 records (including course descriptions, credits, name, prerequisites, etc.) in its new TES database.

26.     CollegeSource also developed software to allow an evaluator to store a given course equivalency in the TES database.  For example, an administrator could store "English 101" at the University of Michigan in 2001 as equivalent to "English 150" at the University of Tennissee in 2009. This capacity is referred to as "Equivalency," "Course Articulation" or "Transcript Reconciliation."  It is particularly useful for state colleges being fed by county community colleges.

27.     CollegeSource announced and delivered TES at the April 2006 AACRAO (American Association of College Registrars and Admissions Officers) conference is San Diego, California.  AcademyOne introduced an arguably comparable product, which AcademyOne calls its "CEMS" (College Equivalency Management System), over one year later, in June of 2007.

28.     Prior to CollegeSource's creation of its TES database, transfer administrators were frequently forced to keep their own private notes regarding credits and equivalencies that had been given to courses.  After TES, transfer administrators were able to see what credits other administrators had given to courses.

29.     CollegeSource's current products incorporating the Digitized Information can be categorized as follows: 1) digitized individual whole college catalogs distributed online, for free for personal use, to students, parents, counselors and teachers; 2) a collection of digitized whole college catalogs from all universities distributed online, at a minimal fee, to libraries and similar entities for personal use; and 3) a collection of individual course descriptions (course number, credits, etc.) and their related data and equivalencies, dating back 16 years, distributed online, at a minimal fee, to registrars, admissions, and transfer personnel.

**CollegeSource's Terms of Use**

30.     CollegeSource makes its Digitized Information available to authorized users online at www.collegesource.com, www.collegesource.org, and tes.collegesource.org (the "Websites").

31.     Abobe's embedded security code used by CollegeSource forces each catalog to be opened to CollegeSource's copyright "splash page" (page 1).

32.     Each of CollegeSource's Websites contain terms of use in conspicuous locations, such that a visitor to the Websites is on notice of said terms and that the authorization to view and use CollegeSource's Digitized Information is restricted.  Such restrictions on the authorization to view and use the Digitized Information include one or more of the following:

This means you may NOT:
*       distribute digital catalog files to others,
*       "mirror" or include digital catalog files on an Internet (or Intranet) server,
*       link to CollegeSource digital catalog files from your website, or
*       modify or re-use digital catalog files without the express written consent of
        CollegeSource, Inc. and the appropriate school.

You may:
*       print copies of the information for your own personal use,
*       store the files on your own computer for personal use only, or
*       reference non PDF documents on this server from your own documents.

CollegeSource, Inc. reserves the right to revoke such authorization at any time, and

any such use shall be discontinued immediately upon written notice from CollegeSource, Inc.

* * *

LIMITATIONS ON USE.

a. Only one individual may access a Service at the same time using the same user name or password, unless CollegeSource, Inc. agrees otherwise.

b. The text, graphics, images, video, design, course description data, PDF college catalogs, information, organization, compilation, look and feel, advertising and all other protectable intellectual property, and all improvements, suggestions, and derivations thereto and thereof (collectively, the "Content") available through the Services is CollegeSource, Inc.'s property and is protected by copyright and other intellectual property laws.   Unless you have CollegeSource, Inc.'s written consent, you may not sell, publish, broadcast, distribute, retransmit the information obtained through any Service, or otherwise provide access to the Content received through the Services to anyone, including, if applicable, your fellow students or employees, with the following two exceptions:

> (i) You may distribute course description data from a Service in non-electronic form to a few individuals for your own personal, non-commercial use, without charge, provided you include all copyright and other proprietary rights notices in the same form in which the notices appear in the Service, original source attribution, and the phrase "Used with permission from CollegeSource, Inc."
> (ii) You may use CollegeSource, Inc.'s "E-mail" service to e-mail course description data from a Service to a few individuals for your own personal, non-commercial use, without charge. You are not permitted to use this service for the purpose of regularly providing other users with access to content from a Service.

c. You agree not to rearrange or modify the Content. You agree not to create abstracts from, scrape or display data from the Content for use on another web site or service. You agree not to post any of the Content from the Services to weblogs, newsgroups, mail lists or electronic bulletin boards, without CollegeSource, Inc.'s written consent. To request consent for this and other matters, please contact CollegeSource Customer Service.

d. CollegeSource, Inc has expended considerable time, effort, money and expertise to compile its data. CollegeSource, Inc. has implemented suitable precautions to detect unauthorized use of catalogs, course descriptions, lists etc. including seeding data to detect unlawful duplication, sale and re-use.

e. You agree not to use the Services for any unlawful or unauthorized purpose.

CollegeSource, Inc. reserves the right to terminate or restrict your access to a
Service if, in its opinion, your use of the Service does or may violate any laws,
regulations or rulings, infringe upon another person's rights or violate the terms of
this Agreement. Also, CollegeSource, Inc. may refuse to grant you a user name that
impersonates someone else, is protected by trademark or other proprietary right law,
or is vulgar or otherwise offensive.

33.     CollegeSource's digitized catalogs also contain prominent terms of use, which

occupy the full second page of each catalog, such that users of the digitized catalogs are on notice

of said terms and are aware that any use of the digitized catalogs are subject to the same

restrictions.  Such restrictions on the authorization to view and use the digitized catalogs are

substantially similar to the following:

This means you may NOT:
*       distribute digital catalog files to others,
*       "mirror" or include digital catalog files on an Internet (or Intranet) server,
*       modify or re-use digital catalog files without the express written consent of
        CollegeSource ® and Career Guidance Foundation  and the appropriate
        school.

You may:
*       print copies of the information for your own personal use,
*       store the files on your own computer for personal use only, or
*       reference this material from your own documents.

CollegeSource ® and Career Guidance Foundation  reserves the right to revoke
such authorization at any time, and any such use shall be discontinued immediately
upon written notice from CollegeSource ® and Career Guidance Foundation.

## AcademyOne Attempts to License CollegeSource's Digitized Information

34.     Defendant AcademyOne is a 35-year junior competitor of CollegeSource in the

college transfer and information industry.  Like CollegeSource before it, AcademyOne wished to

offer information and data services on the Internet related to equivalencies, course articulations,

transcript reconciliations and/or college transfer.

35.     On information and belief, AcademyOne recognized that capturing the data required

for its services from the data's original sources (including legacy *whole* catalogs) would require an

investment of time and money similar to the years of time and approximately $10,000,000.00

invested by CollegeSource.  AcademyOne recognized the value of creating a database of

equivalencies, course articulations and/or transcript reconciliations from information that had

already been digitized.  With access to CollegeSource's Digitized Information, AcademyOne

would be able to "cut and paste" CollegeSource's course descriptions into AcademyOne's

competing website's databases.  Access to CollegeSource's Digitized Information would allow

AcademyOne to avoid this investment in acquisition, scanning / OCR, and quality control costs.

    36.    For over three (3) months, AcademyOne attempted to lawfully acquire the right to

exploit  CollegeSource's library of Digitized Information.  AcademyOne's efforts included, but

were not necessarily limited to:

        a.    Exploratory phone calls;

        b.    On October 4, 2005 AcademyOne Vice President Ed Johnson emailed

CollegeSource sales representative Dave Hunt and requested the "cost to obtain

ALL your catalogs in electronic form, ASAP."  Mr. Johnson contacted

CollegeSource after having signed up for a free trial of CollegeSource's digitized

college catalog service.

        c.    On December 20, 2005 AcademyOne's Peggi Munkittrick (Director of

Marketing) emailed CollegeSource "to determine whether CollegeSource had the

interest and/or ability to provide [AcademyOne] with an electronic file of courses

that could be loaded into our course inventory."  Like Mr. Johnson, Ms. Munkittrick

had already signed up for a free trial of CollegeSource's digitized college catalog

service.

d.      AcademyOne's Ms. Munkittrick again emailed CollegeSource on January

25, 2006 "...to determine whether a conversation is warranted to discuss how our

companies might benefit from working together in an effort to create an online

course inventory."

37.     The general purpose of AcademyOne's phone calls and emails was to license access

to, and commercial use of, CollegeSource's digitized college catalogs for the purpose of extracting

certain course description data (commonly called "data mining" or "scraping") for commercial use

by AcademyOne.  AcademyOne also desired to distribute entire *whole* catalogs.

38.     CollegeSource declined AcademyOne's requests to license the Digitized

Information.

## RICO CASE STATEMENT

### Misconduct, Goals and Basis of Liability

39.     Defendant Moldoff and defendant AcademyOne engaged in conduct that violated

18 U.S.C. §1962(c) and (d).

40.     On information and belief, the goals of defendants and their co-conspirators,

through their acts of racketeering alleged herein, were:

a.      To steal CollegeSource's Digitized Information;

b.      To avoid, through theft, the high costs of acquisition incurred by

CollegeSource in relation to the Digitized Information;

c.      To unfairly compete with CollegeSource in interstate commerce with the

stolen Digitized Information;

d.      To cover up the theft of CollegeSource's Digitized Information, through

perjury and/or the obstruction of justice when necessary; and

e.    To escape liability for the theft of CollegeSource's Digitized Information.

41.    On information and belief, defendant Moldoff participated in an enterprise consisting of defendant AcademyOne (the **"AcademyOne Enterprise"**) through a pattern of racketeering activity that includes the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503). In addition to participating in the racketeering activity of the AcademyOne Enterprise directly, defendant Moldoff operated and managed defendant AcademyOne, and used it to conduct, through interstate commerce, a pattern of racketeering activity.

42.    On information and belief, defendant Moldoff and defendant AcademyOne participated in an enterprise consisting of defendant Moldoff, defendant AcademyOne and Bejing Zhongtian-Noah Sports Science Company, Ltd., a Chinese limited liability company (**"Noah"**), through a pattern of racketeering activity that includes the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315) (the **"Noah Enterprise"**). In addition to participating in the racketeering activity of the Noah Enterprise, defendant Moldoff and defendant AcademyOne conspired with each other and Noah to engage in racketeering activity.

**Identification of Victim and Injury**

43.    CollegeSource was one of the victims of defendants' racketeering activity alleged herein, suffered harm from defendants' racketeering activity, and continues to suffer harm. The extent of the harm to CollegeSource is believed to be in excess of $1,000,000. The harm proximately caused to CollegeSource as a result of defendants' racketeering activity alleged herein includes, but may not be limited to:

a.    The loss of business due to defendants' competing use of CollegeSource's Digitized Information, including, but not limited to, a $2,688,333.00 contract

awarded to defendant AcademyOne;

b.      The loss of a reasonable license for defendants' extensive use of CollegeSource's Digitized Information;

c.      The loss of value of CollegeSource's investment in the Digitized Information and the competitive advantage conferred by the exclusive possession thereof;

d.      The loss of business due to defendants' fraudulent misrepresentations and omissions, including, but not limited to, a $2,688,333.00 contract awarded to defendant AcademyOne;

e.      The delay in enforcing CollegeSource's rights due to defendants' fraudulent misrepresentations, omissions and obstructions; and

f.      Legal fees and prejudice to claims for business injury resulting from defendants' obstruction of justice in the amount of at least $250,000.00.

**Pattern Of Racketeering Activity**

Predicate Act: Interstate Transportation and Receipt of Stolen Property (18 U.S.C. §§2314 and 2315)

44.      The Digitized Information rightfully belongs to CollegeSource.  The Digitized Information is the result of a substantial investment of both time and money by CollegeSource and its predecessor.  The investment of time and resources by CollegeSource and its predecessor to collect, convert and digitize the Digitized Information is currently estimated to be in excess of $10,000,000.

45.      Through its unsuccessful attempts to license the Digitized Information from CollegeSource and a failed Federal lawsuit contending that CollegeSource's claim of ownership of

the Digitized Information was false, AcademyOne has acknowledged and established that the
Digitized Information rightfully belongs to CollegeSource.

46.    The Digitized Information is worth well in excess of $5,000.

47.    The Digitized Information is of the type that is ordinarily the subject of commerce,
including interstate commerce.  The Digitized Information establishes the value of CollegeSource's
digitized *whole* catalogs and Websites.  The physical form of any goods that contain the Digitized
Information is secondary in every respect to the Digitized Information.

48.    The Digitized Information is stored on CollegeSource's servers, located exclusively
in San Diego, California.

49.    On information and belief, defendants posed (or caused others to pose) as a
legitimate user (student, parent,  faculty, guidance counselor, *etc.*) to gain access to
CollegeSource's Digitized Information on CollegeSource's Websites.  Defendants then took
CollegeSource's Digitized Information for the purpose of using it to compete with CollegeSource
in interstate commerce.  Defendants did not inform CollegeSource that they intended to access
CollegeSource's Websites for the purpose of misappropriating CollegeSource's Digitized
Information and using it to compete against CollegeSource.  On information and belief, the
foregoing acts were performed under the management and direction of defendant Moldoff.

50.    On information and belief, defendant AcademyOne, through and under the
management and direction of defendant Moldoff, conspired and entered into an Agreement with
Noah whereby Noah would access CollegeSource's Websites to collect, copy and distribute
CollegeSource's Digitized Information to AcademyOne for AcademyOne to use to compete with
CollegeSource in interstate commerce.  On information and belief, defendant AcademyOne,
through and under the management and direction of defendant Moldoff, conspired and entered into

an Agreement with Noah whereby Noah would populate AcademyOne's online database with CollegeSource's Digitized Information for AcademyOne to use to compete with CollegeSource in interstate commerce. Noah charged AcademyOne a fee to take CollegeSource's Digitized Information and provide it to defendants.

51.     Defendants were not authorized, either implicitly or explicitly, to access CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

52.     Defendants knew or should have known of the terms of use on CollegeSource's Websites and digitized catalogs.

53.     On information and belief, AcademyOne had actual knowledge of the terms of use on CollegeSource's Websites and digitized catalogs.

54.     On information and belief, AcademyOne accepted the benefit of using CollegeSource's Websites and Digitized Information with knowledge of the terms of use on CollegeSource's Websites and digitized catalogs, and thereby assented to such restrictions of use.

55.     Defendants' taking and use of the Digitized Information exceeded any authorization provided by CollegeSource.

56.     Any authorization defendants had to access the Websites and Digitized Information terminated when defendants used or intended to use CollegeSource's Digitized Information in an unauthorized way.

57.     CollegeSource reasonably expected that the users of its Websites and Digitized Information would abide by CollegeSource's terms of use disclosed on the Websites and digitized catalogs.

58.     Defendants knew, or should have known, that CollegeSource would not have granted defendants access to CollegeSource's Websites and/or Digitized Information if defendants would have informed CollegeSource that defendants intended to use access to CollegeSource's Websites for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

59.     Defendants knew through their failed attempt to license the Digitized Information that CollegeSource would not grant defendants the right to make commercial use of CollegeSource's Digitized Information.

60.     Through the foregoing acts, defendants stole, converted or fraudulently took CollegeSource's Digitized Information.  On information and belief, the foregoing acts were performed under the management and direction of defendant Moldoff.

61.     On information and belief, after defendants obtained CollegeSource's Digitized Information, defendants transmitted, or had Noah transmit, the Digitized Information to AcademyOne's computer(s) and databases outside of California, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314.  On information and belief, the foregoing acts were performed under the management and direction of defendant Moldoff.

62.     On information and belief, defendants distributed, transmitted, transported and sold CollegeSource's Digitized Information to the users of AcademyOne's website(s) and databases throughout the United States, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314.  On information and belief, the foregoing acts were performed under the management and direction of defendant Moldoff.

63.     On information and belief, defendants continue to distribute, transmit, transport and sell CollegeSource's Digitized Information to the users of AcademyOne's website(s) and databases

throughout the United States, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314. On information and belief, the foregoing acts are performed under the management and direction of defendant Moldoff.

64. In June of 2010, CollegeSource discovered AcademyOne offering current course descriptions that had been taken from CollegeSource's Digitized Information. Following CollegeSource's initial discovery in 2007 of AcademyOne's theft of the Digitized Information, CollegeSource imbedded its current *whole* catalogs with a copyright notice that is invisible in the .pdf document but appears in the event text from the .pdf is copied and pasted. Multiple current course descriptions on AcademyOne's website and database prominently display CollegeSource's embedded copyright notice.

65. On information and belief, defendants continue to store CollegeSource's Digitized Information on AcademyOne's computer(s) and databases, knowing the same to have been stolen, unlawfully converted or taken, in violation of 18 U.S.C. §2315. On information and belief, the foregoing acts are performed under the management and direction of defendant Moldoff.

66. CollegeSource has been wrongfully deprived of the benefit, value and exclusive use of its Digitized Information.

67. Through its unauthorized and wrongful taking of CollegeSource's Digitized Information, AcademyOne has avoided the substantial acquisition, scanning / OCR, and quality control costs CollegeSource had incurred. It has also avoided paying a license to CollegeSource, as it had offered to do. Moldoff, on information and belief, personally benefitted as AcademyOne's President and C.E.O.

Predicate Act: Wire Fraud (18 U.S.C. §1343)

68. In April of 2007, after CollegeSource terminated negotiations with AcademyOne for

use of its college catalog database, CollegeSource discovered AcademyOne offering

CollegeSource's digitized *whole* catalogs for distribution on AcademyOne's interactive

collegetransfer.net Website.  Following a brief investigation, CollegeSource discovered

approximately six hundred and eighty (680) of its digitized *whole* catalogs being offered on

AcademyOne's website.  Each of these 680 catalogs contained CollegeSource's terms of use on

their entire second page.

69.     On April 20, 2007, CollegeSource delivered a letter to AcademyOne demanding

that AcademyOne cease and desist its use of CollegeSource's Digitized Information.

70.     On information and belief, defendants devised or intended to devise a scheme or

artifice to defraud.  On April 23, 2007, defendant Moldoff, as President and C.E.O. of

AcademyOne, emailed CollegeSource in interstate commerce in response to CollegeSource's April

20, 2007 demand (the **"Response"**).  In the Response, defendants falsely represented for the

purpose of executing such scheme or artifice that they had "removed ALL course catalog PDF files

as of this afternoon and are working to determine actually how many catalogs are in question have

[sic] your copyright statement."  Defendants represented that they would "honor [CollegeSource's]

request and remove the content."  Defendant Moldoff would later falsely declare that all .PDF files

were removed. (*See* Paragraph 109).

71.     Defendants' representations in the Response that they had "removed ALL course

catalog PDF files" and would "honor your request and remove the content" were fraudulent

misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and

comprehension.  All defendants had done was remove hypertext "links" to CollegeSource's

digitized catalogs from their web-pages.  However, defendants retained CollegeSource's Digitized

Information on their computer(s) and server(s).  CollegeSource's digitized *whole* catalogs were still

available at the same Internet addresses (Universal Resourse Locators, "URL").  Defendants

continued to utilize CollegeSource's Digitized Information to "scrape" data and populate

AcademyOne's competing database with, *inter alia*, course descriptions from CollegeSource's

digitized *whole* catalogs.  Defendants never removed the information in AcademyOne's database

taken from CollegeSource's Digitized Information.

      72.    In addition to the initial copying of at least 680 of CollegeSource's digitized *whole*

catalogs, defendants copied the descriptions from additional CSI college catalogs, up to the

present, and pasted them into the course descriptions on AcademyOne's website.  That

AcademyOne's course descriptions were copied from CollegeSource's Digitized Information is

memorialized by, *inter alia*, the presence of the same random errors on AcademyOne's Websites

and information that appear in CollegeSource's original Digitized Information and the presence of

imbedded CollegeSource copyright notices.

      73.    Defendants' representations in the Response that they had "removed ALL course

catalog PDF files" and would "honor your request and remove the content" were made knowingly

to cover up defendants' continuing use of the Digitized Information and with the intent to deceive

CollegeSource into believing that AcademyOne had ceased, or would cease, all use of

CollegeSource's Digitized Information.  At the very minimum, defendants' foregoing

representations were made with reckless disregard for the truth.

      74.    Defendants' representations in the Response that they had "removed ALL course

catalog PDF files" and would "honor your request and remove the content" constituted wire fraud,

in violation of 18 U.S.C. §1343.

      75.    CollegeSource reasonably relied on defendants' Response and did not conduct any

further inquiry into AcademyOne's use of CollegeSource's Digitized Information at that time.

76.     Unbeknownst to CollegeSource, during the time of CollegeSource's reliance upon the Response, AcademyOne retained CollegeSource's originally stolen Digitized Information, was continuing its pattern of theft to acquire more, and was using CollegeSource's Digitized Information to build a competing database and course articulation service.

77.     On June 9, 2006, in an attempt to monopolize the college transfer marketplace, defendant AcademyOne (through Ms. Lin Zhou and Ms. Peggi Munkittrick) filed two patent applications for college transfer / course articulation services.  The first, Application No. 11/450,712, was entitled "System and method for providing educational course data."  The second, Application No. 11/450,761, was entitled "System and method for managing educationl [sic] courses."

78.     AcademyOne's patent applications (through Ms. Lin Zhou and Ms. Peggi Munkittrick) failed to disclose prior art that rendered the supposed "inventions" obvious, clearly anticipated, unoriginal and not novel.  The United States Patent and Trademark Office rejected both applications and declined to issue either patent.

Predicate Act: Wire Fraud (18 U.S.C. §1343)

79.     On or around April 1, 2008, the South Carolina Department of Higher Education issued a "Request for Proposal"(or "RFP") , which solicited bids from companies for a "Course Articulation and Transfer System."  The RFP required any response to be submitted online.

80.     Both defendant AcademyOne and CollegeSource responded to the RFP.

81.     Defendant AcademyOne's response to the RFP was executed by defendant Moldoff as AcademyOne's "Chairman / Chief Executive Officer."

82.     Defendant AcademyOne's response to the RFP was submitted to the South Carolina Department of Higher Education through the wires in interstate commerce.

83.     On information and belief, defendants devised or intended to devise a scheme or artifice to defraud.  Defendant AcademyOne's response to the RFP contained fraudulent misrepresentations and omissions reasonably calculated to deceive persons of ordinary prudence and comprehension for the purpose of executing such scheme or artifice to defraud.  In AcademyOne's response to the RFP, defendants did not disclose that AcademyOne's website and database(s) offered in response to the RFP were populated with Digitized Information stolen from CollegeSource.  To the contrary, defendants falsely represented that "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever related thereto."  The foregoing omission and representation were false because defendants had knowingly stolen CollegeSource's Digitized Information and populated AcademyOne's database and website offered in response to the RFP therewith.

84.     On information and belief, defendants' fraudulent misrepresentations and omissions in AcademyOne's response to the RFP were made knowingly and with the intent to deceive the South Carolina Department of Higher Education into believing that AcademyOne was the sole owner of the contents of its database and website offered in response to the RFP.  At the very minimum, defendants' misrepresentations or omissions were the result of a reckless disregard for the truth.

85.     Defendants' omissions and misrepresentations in AcademyOne's response to the RFP that  "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever related thereto" constituted wire fraud, in violation of 18 U.S.C. §1343.

86.     CollegeSource complained to the South Carolina Commission of Higher Education hearing examiner that AcademyOne's bid offered information and data that had been stolen from

CollegeSource.  On August 25, 2008, the South Carolina hearing examiner ruled that the issue

presented a dispute between private parties to be redressed by the Courts.

87.     In reliance upon AcademyOne's fraudulent misrepresentations and omissions in its

response to the RFP, the South Carolina Department of Higher Education awarded its contract to

AcademyOne.  The total potential value of the contract was estimated at $2,688,333.00.

Predicate Act: Obstruction of Justice (18 U.S.C. §1503)

88.     On October 27, 2008, CollegeSource sued AcademyOne in the United States

District Court for the Southern District of California, Case No. 3:08-cv-01987-H-CAB (the

**"California Action"**).  CollegeSource's Complaint in the California Action pled claims for

violation of the United States Computer Fraud and Abuse Act (18 U.S.C. §1030(g)), violation of

the California Computer Crimes Statute (Cal. Pen. Code §502(e)), breach of contract,

misappropriation and unjust enrichment.

89.     In retaliation for the California Action, AcademyOne brought an action against

CollegeSource in the Eastern District of Philadelphia, AcademyOne, Inc. v. CollegeSource, Inc.,

08-cv-5707 (the **"Pennsylvania Action"**).

90.     AcademyOne's Pennsylvania Action was dismissed on CollegeSource's motion for

summary judgment.  AcademyOne's time to appeal has lapsed.

91.     On December 3, 2008, AcademyOne filed a motion to dismiss the California Action

for lack of personal jurisdiction.

92.     On December 3, 2008, in support of its motion to dismiss, AcademyOne filed a

declaration of defendant Moldoff (the **"First Moldoff Declaration"**).  In the First Moldoff

Declaration,  defendant Moldoff swore to the following statement that defendants knew contained

false representations to the Southern District of California:

Representing AcademyOne, I visited California in March 2008. That visit, however, was only to attend and sponsor a keynote speaker on energy conservation at a policy conference of state higher education executives. *Higher education institutions were not represented at this conference. The attendees at the conference were policy-level administrators, not actual buyers of AcademyOne's products.*

(Italics added).

93.      Defendants' representations to the Southern District of California that "[h]igher education institutions were not represented at this conference" and that the attendees at the conference in California were "not actual buyers of AcademyOne's products," were false and defendants knew them to be false.

94.      On December 4, 2008, in support of its motion to dismiss, AcademyOne filed an amended declaration of defendant Moldoff (the **"Second Moldoff Declaration"**). In the Second Moldoff Declaration, defendant Moldoff swore to the same statement in the First Moldoff Declaration, above, that defendants knew contained false representations to the Southern District of California.

95.      AcademyOne's motion to dismiss was denied without prejudice to refile, following jurisdictional discovery. In denying AcademyOne's motion without prejudice, the Southern District of California relied upon the First Moldoff Declaration and Second Moldoff Declaration.

96.      On July 28, 2009, following jurisdictional discovery and a second motion to dismiss that was mooted by the filing of an amended complaint, AcademyOne filed a third motion to dismiss for lack of personal jurisdiction.

97.      On July 28, 2009, in support of its third motion to dismiss, AcademyOne filed a declaration of defendant Moldoff (the **"Third Moldoff Declaration"**). In the Third Moldoff Declaration, defendant Moldoff swore to the following statement that defendants knew contained

false representations to the Southern District of California:

> Representing AcademyOne, I visited California only one time. That visit was to attend a conference in San Diego in August 2008 that was held by the State Higher Education Executive Officers ("SHEEO"). At the conference, AcademyOne sponsored a keynote speaker on energy conservation. *Higher education institutions were not represented at the conference. The attendees were policy-level administrators, not actual buyers of AcademyOne's products.*

(Italics added).

98.     Defendants' representations to the Southern District of California that "[h]igher education institutions were not represented at the conference," and the attendees at the SHEEO conference were "not actual buyers of AcademyOne's products," were false and defendants knew them to be false.  Defendant made said representations to counter CollegeSource's evidence in the California Action that personal jurisdiction in California is proper.

99.     CollegeSource was also present at the conference referenced in the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration.  Higher education institutions were represented at the conference.  The attendees at the conference were AcademyOne's and CollegeSource's target market.

100.    In the Pennsylvania Action, in an unsuccessful attempt to show that "College Transfer" was AcademyOne's supposed trademark, defendant Moldoff (on behalf of AcademyOne) submitted a declaration in which he swore the attendees at the conference referenced in the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration "in particular are a target audience because their designees have direct oversight over the transfer programs at their institutions."

101.    In the Pennsylvania Action, in an unsuccessful attempt to show that "CollegeTransfer" was AcademyOne's supposed trademark, defendant Moldoff (on behalf of

AcademyOne) submitted a declaration in which he swore: "AcademyOne spent over [$(redacted)]

to attend conferences held by, or become members [sic] of, educational state agencies - precisely

AcademyOne's target market for www.collegetransfer.net - and associations to promote

www.collegetransfer.net....These organizations included:...The State Higher Education Executive

Organization ('SHEEO')."

    102.   The sworn statements in defendant Moldoff's declarations submitted in the

California Action and the Pennsylvania Action are inconsistent.  The statements in defendant

Moldoff's sworn declarations in the California Action were false, or the statements in his sworn

declaration in the Pennsylvania Action were false, or both were false.

    103.   In the Third Moldoff Declaration, defendant Moldoff swore to the following

statement that defendants knew contained false representations to the Southern District of

California:

> I directed the Chinese contractor's [Noah's] work. I am familiar with the software
> and process that the contractor used to download the files and extract course
> descriptions from the .html files or .pdf catalogs. When the contractor collected
> these course descriptions, it downloaded the digital content as complete files
> *without opening each individual file. No copyright notice or "splash" page was seen*
> *by the contractor or any AcademyOne employee during the process.*

(Italics added).

    104.   In the California Action, defendants represented that CollegeSource's .PDF college

catalog files and course information were never seen "by the contractor or any AcademyOne

employee" because of an "Excel macro" that scraped the data from the files.  Defendant Moldoff

declared, in the Third Moldoff Declaration, that he was "familiar with the software and process

that the contractor used."

    105.   In the Pennsylvania Action, the Hon. Judge John R. Padova ordered AcademyOne

to produce the "Excel macros" that defendants supposedly used to scrape the data in

CollegeSource's digitized *whole* catalogs without opening them.  AcademyOne did not produce the

"Excel macros."  To justify its failure to produce the "Excel macros" in the Pennsylvania Action,

AcademyOne represented that defendants did not have access or control relating thereto.  On

information and belief, AcademyOne did not make any reasonable attempt to locate the "Excel

macros."  The "Excel macros" were not produced in response to discovery ordered by the Court.

106.    Defendants' representation to the Southern District of California that neither Noah

(the "Chinese contractor") nor AcademyOne ever opened CollegeSource's digitized *whole* catalogs

is false and defendants knew it to be false.  CollegeSource's digitized *whole* catalogs were

necessarily opened in order for AcademyOne's database to be populated with CollegeSource's

digitized course descriptions.  The fact that Noah opened and viewed CollegeSource's digitized

*whole* catalogs was confirmed by the deposition testimony of AcademyOne's senior manager of

development, Dr. Lin Zhou.  It is also confirmed by, *inter alia*, the presence of CollegeSource's

embedded copyright notices that only are displayed when text has been copied from a .pdf file.

107.    In the Third Moldoff Declaration, while acting on behalf of AcademyOne,

defendant Moldoff swore to the following statement that defendants knew contained false

representations to the Southern District of California:

> AcademyOne posted 18,000 .pdf files that it collected from these websites in April
> 2006.  In April 2007, Kerry Cooper of CollegeSource gave me a letter claiming
> rights to some of the .pdf files.  Shortly after receiving the letter, AcademyOne
> *removed all of the .pdf files*, but did not admit or agree that CollegeSource had
> rights in them.  AcademyOne *did not retain copies of these files on its servers.*
> AcademyOne *does not possess other files, either on its computers or website,*
> *digitized by CollegeSource.*

(Italics added).

108.    Defendants' representations to the Southern District of California that AcademyOne

"removed all of the .pdf files," "did not retain copies of these files on its servers, and "does not possess other files, either its computers or website, digitized by CollegeSource," were false and defendants knew them to be false. Since April 2007, defendants have retained and added to CollegeSource's Digitized Information on their computers, and have continued to populate AcademyOne's competing database with CollegeSource's Digitized Information. This fact is established by, *inter alia*, the presence of the same random errors in defendants' data as are present in the Digitized Information. This fact is further established by, *inter alia*, the presence of CollegeSource's imbedded copyright notice on course descriptions and data copied from CollegeSource's digitized *whole* catalogs.

109.   The Southern District of California relied upon the Third Moldoff Declaration, and the foregoing false statements contained therein, in granting AcademyOne's third motion to dismiss for lack of personal jurisdiction. In its August 24, 2009 Order granting AcademyOne's motion, the Southern District of California found, *inter alia*:

> In August 2008, AcademyOne's CEO visited California to attend a policy conference of state higher education executives and sponsor a speaker on energy conservation. (Moldoff Decl. ¶ 14.) AcademyOne states that *no actual buyers of its products were in attendance at the conference* and that no business resulted from the conference. (Id.)

*   *   *

> Defendant explains that it collected information for its database by hiring a contractor to visit the websites of thousands of colleges. (Moldoff Decl. ¶ 6-8.) The college's course descriptions were *downloaded without being opened, such that AcademyOne never saw Plaintiff's terms of use statement* allegedly present on approximately 680 of these documents. (Id...)

(Italics added).

110.   After the California Action was filed, AcademyOne was under the obligation to not destroy evidence relating to the unauthorized taking of CollegeSource's Digitized Information and

assertion of personal jurisdiction over AcademyOne alleged therein.  On information and belief,

AcademyOne was aware of AcademyOne's obligation to not destroy evidence.

111.    On information and belief, AcademyOne, Moldoff  reasonably believed that

electronic evidence of AcademyOne's taking of CollegeSource's Digitized Information would be

relevant to, and requested in, the California Action.  On information and belief, AcademyOne,

Moldoff reasonably believed that AcademyOne's e-mail contacts would be relevant to and

requested in the California Action.

112.    In the California Action, CollegeSource requested the production of AcademyOne's

and Noah's log files and audit trails for the acquisition of data for AcademyOne's database.  Such

log files and audit trails would be proof of AcademyOne's unauthorized taking of CollegeSource's

Digitized Information.  On information and belief, with the intent to corruptly influence, obstruct

and/or impede the due administration of justice, defendant AcademyOne and Noah destroyed or

withheld log files and audit trails for the acquisition of data for AcademyOne's database.  On

information and belief, such destruction and withholding of evidence was performed under the

management and direction of defendant Moldoff.

113.    In the California Action, CollegeSource requested the production of AcademyOne's

e-mail contacts.  Such files would provide proof of AcademyOne's extensive contacts with

California and support personal jurisdiction over AcademyOne in the Southern District of

California.  On information and belief, with the intent to corruptly influence, obstruct and/or

impede the due administration of justice, defendant AcademyOne destroyed or withheld its

California e-mail contacts.  On information and belief, such destruction and withholding of

evidence was performed under the management and direction of defendant Moldoff.

114.    AcademyOne argued the purported lack of evidence  relating to the unauthorized

taking of CollegeSource's Digitized Information and assertion of personal jurisdiction over AcademyOne alleged in the California Action. On information and belief, the Southern District of California would not have granted AcademyOne's third motion to dismiss if the evidence destroyed or withheld by AcademyOne had been provided to the Court.

115.    CollegeSource timely appealed the Southern District of California's grant of AcademyOne's third motion to dismiss to the Ninth Circuit Court of Appeals. Said appeal is still pending. AcademyOne continues to rely upon the false statements in the First Moldoff Declaration, Second Moldoff Declaration, and Third Moldoff Declaration. AcademyOne also continues to rely upon the absence of the evidence that it has destroyed or withheld, as set forth above.

116.    Defendants' false statements in the First Moldoff Declaration, Second Moldoff Declaration, and Third Moldoff Declaration, and its destruction and/or withholding of evidence, as set forth above, obstructed and halted the judicial process. Defendants' foregoing conduct harmed CollegeSource in the pursuit of its claims against AcademyOne to redress business injuries AcademyOne caused CollegeSource to suffer. Due to defendants' false statements and destruction and/or withholding of evidence, as set forth above, CollegeSource has suffered, and continues to suffer, great expenses, delays and inconvenience in its prosecution of the claims in the California Action.

117.    Defendants intended for the false statements in the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration, and the destruction and/or withholding of evidence, to obstruct or impede the due administration of justice.

118.    By way of submitting the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration to the Southern District of California and relying thereon in their

motions to dismiss, defendants corruptly endeavored to influence, and did influence, the Southern District of California in the discharge of its duty to adjudicate the California Action, in violation of 18 U.S.C. §1503.

119.    By way of submitting the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration to the Southern District of California and relying thereon in their motions to dismiss, defendants corruptly endeavored to influence, obstruct and/or impede, and did influence, obstruct and/or impede, the due administration of justice, in violation of 18 U.S.C. §1503.

120.    By way of submitting the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration to the Southern District of California and relying thereon in their motions to dismiss, defendants corruptly influenced, obstructed and/or impeded the due administration of justice, in violation of 18 U.S.C. §1503.

121.    Through the destruction and/or withholding of evidence, as set forth above, and relying thereon in their motions to dismiss, defendants corruptly endeavored to influence, and did influence, the Southern District of California in the discharge of its duty to adjudicate the California Action, in violation of 18 U.S.C. §1503.

122.    Through the destruction and/or withholding of evidence, as set forth above, and relying thereon in their motions to dismiss, defendants corruptly endeavored to influence, obstruct and/or impede, and did influence, obstruct and/or impede, the due administration of justice, in violation of 18 U.S.C. §1503.

123.    Through the destruction and/or withholding of evidence, as set forth above, and relying thereon in their motions to dismiss, defendants corruptly influenced, obstructed and/or impeded the due administration of justice, in violation of 18 U.S.C. §1503.

Predicate Act: Wire Fraud (18 U.S.C. §1343)

124.    AcademyOne has used the domain name "www.CollegeTransfer.net" to exploit CollegeSource's Digitized Information without CollegeSource's authorization, and continues to do so to this day.

125.    On July 3, 2009, while the California Action and Pennsylvania Action were pending, AcademyOne filed Application Serial No.77774054 with the United States Patent and Trademark Office (**"USPTO"**) to register "CollegeTransfer.net" as a service mark (the **"Application"**).

126.    The Application was signed by defendant Moldoff.

127.    On information and belief, defendants transmitted the Application to the USPTO through the wires in interstate commerce.

128.    In the Application, defendants falsely represent that AcademyOne first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005."

129.    Defendants' representation in the Application that AcademyOne first used "CollegeTransfer.net" "at least as early as 12/01/2005" was false and defendants knew it to be false.

130.    AcademyOne did not use CollegeTransfer.net in commerce until March of 2007.

131.    On information and belief, defendants devised or intended to devise a scheme or artifice to defraud.  Defendants' representation in the Application that AcademyOne first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" was made with the willful intent to deceive the USPTO into issuing a registration to AcademyOne with a first use date of 12/01/2005 for the purpose of executing such scheme or artifice to defraud.

132.    The USPTO relied upon defendants' representation in the Application that

AcademyOne first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" and issued AcademyOne a registration on the Supplemental Register with a first use date of 12/01/2005.

133.    Defendants' omissions and misrepresentations in AcademyOne's Application regarding AcademyOne's use of "CollegeTransfer.net" constituted wire fraud, in violation of 18 U.S.C. §1343.

**Relatedness and Continuity of Racketeering Activity**

134.    Defendants' foregoing acts of interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503) form a pattern of related racketeering activity. On information and belief, all had the same or related purpose to steal CollegeSource's Digitized Information, make unauthorized and unfair commercial use thereof, cover it up and/or escape liability. On information and belief, the central participants, defendants AcademyOne and Moldoff, were the same. The target of the wrongful conduct, CollegeSource, was the same.

135.    Defendants' foregoing acts of interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503) amount to and constitute a threat of continuing racketeering activity. Defendants' racketeering activity began no later than April of 2007, when CollegeSource discovered defendants making unauthorized commercial use of CollegeSource's Digitized Information and demanded that defendants cease and desist therefrom. Defendants' acts of interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315) continue to this day, as alleged above. Defendants' acts of wire fraud (18 U.S.C. §1343) in relation to the RFP occurred in June 2008 and their acts of obstruction of justice (18 U.S.C. §1503) began no later than December 2, 2008 and continue to this

day.

**Enterprises Involved**

AcademyOne Enterprise

136.    The AcademyOne Enterprise consists of AcademyOne, Inc., a Pennsylvania corporation.

137.    Defendant Moldoff is President and Chief Executive Officer of AcademyOne.  On information and belief, defendant Moldoff is also AcademyOne's founder and Chairman of the Board.  On information and belief, defendant Moldoff actively managed the affairs of AcademyOne as an enterprise through a pattern of racketeering activity and used AcademyOne as a vehicle through which unlawful activity was committed, as set forth above.

138.    AcademyOne is a "corporation" and "distinct legal entity," within the meaning of 18 U.S.C. §1961(4).

139.    AcademyOne regularly engages in interstate commerce, including, but not limited to, through providing course articulation and transfer services to individuals and state contracting entities throughout the United States.

140.    On information and belief, the usual and daily activities of AcademyOne differ from the acts of racketeering alleged herein.  On information and belief, AcademyOne's usual and daily activity is to function as a legitimate business.  On information and belief, some of AcademyOne's digitized catalogs and course information may have been acquired through sources other than CollegeSource's Digitized Information.  However, on information and belief, defendants have destroyed the digital audit trail.

141.    On information and belief, defendant Moldoff personally benefitted from the racketeering activities through which the affairs of the AcademyOne Enterprise were conducted.

142.    As described more fully above, the AcademyOne Enterprise conducted activities related to the alleged pattern of racketeering activity including the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503):

a.    AcademyOne employees, agents and contractors posed as legitimate users of CollegeSource's Websites to steal the Digitized Information;

b.    AcademyOne entered into a contract with Noah, under which Noah stole the Digitized Information and provided it to AcademyOne;

c.    AcademyOne received and stored the stolen Digitized Information;

d.    AcademyOne transported and sold the stolen Digitized Information;

e.    AcademyOne made fraudulent misrepresentations to CollegeSource in AcademyOne's Response to CollegeSource's demand for AcademyOne to cease and desist from its unauthorized use of CollegeSource's Digitized Information;

f.    AcademyOne made fraudulent misrepresentations to the State of South Carolina in AcademyOne's response to the RFP;

g.    AcademyOne submitted and relied upon Moldoff's false statements in the California Action

h.    AcademyOne destroyed and/or withheld evidence relevant to the California Action; and

i.    AcademyOne submitted and relied upon Moldoff's false statements in its Application to the USPTO for resgitration of "CollegeTransfer.net."

Noah Enterprise

143.    The Noah Enterprise consists of defendant Moldoff, defendant AcademyOne and Bejing Zhongtian-Noah Sports Science Company, Ltd., a Chinese limited liability company ("Noah").

144.    On information and belief, the Noah Enterprise is an association in fact between Noah and defendants.  The organization of the Noah Enterprise is based upon a written agreement between Noah and defendants. Under the agreement, Noah would gather information for AcademyOne's database(s) and website and, upon information and belief, populate AcademyOne's database(s) and website therewith.  The Noah Enterprise functions as a continuing unit for the purpose acquiring and populating AcademyOne's database(s) and website with information.  On information and belief, defendant Moldoff is in charge of and directs the activities of the Noah Enterprise.

145.    The Noah Enterprise consists of more than defendants and is distinct from defendants.

146.    The Noah Enterprise regularly engaged in and engages in interstate commerce, including, but not limited to, through the interstate transportation and transmission of digital property and sending and receipt of funds internationally and across state lines.

147.    On information and belief, the usual and daily activities of the Noah Enterprise differ from the acts of racketeering alleged herein.  On information and belief, some of the digitized catalogs and information acquired by the Noah Enterprise and used to populate AcademyOne's database(s) and website were acquired through sources other than CollegeSource's Digitized Information.  However, on information and belief, defendants have destroyed the digital audit trail.

148.    On information and belief, defendants benefitted from the racketeering activities

through which the affairs of the Noah Enterprise were conducted.

149.   As described more fully above, the Noah Enterprise conducted activities related to the alleged pattern of racketeering activity including the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315) and obstruction of justice (18 U.S.C. §1503):

      a.     Defendants entered into a contract with Noah under which Noah would steal the Digitized Information and provide it to AcademyOne;

      b.     Noah transmitted the stolen Digitized Information to defendants and, upon information and belief, populated AcademyOne's database(s) and website with the stolen Digitized Information;

      c.     Defendants received the stolen Digitized Information from Noah and stored it;

      d.     Defendants transported and sold the stolen Digitized Information; and

      e.     Defendants and Noah destroyed and/or withheld evidence relevant to the California Action.

### FIRST CAUSE OF ACTION
(Civil Racketeering)
[18 U.S.C. §1964]

150.   CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 149 of this Complaint as though set forth in this cause of action.

151.   CollegeSource brings this cause of action against defendant AcademyOne only.

152.   CollegeSource brings this cause of action pursuant to 18 U.S.C. §1964.

153.   Defendant AcademyOne has conducted or participated in the conduct of the affairs of the Noah Enterprise through a pattern of racketeering activity including the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C.

§1343) and obstruction of justice (18 U.S.C. §1503), in violation of 18 U.S.C. §1962(c).

154.    Defendant AcademyOne has conspired to conduct the affairs of the Noah Enterprise

through a pattern of racketeering including the interstate transportation and receipt of stolen

property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18

U.S.C. §1503), in violation of 18 U.S.C. §1962(d).

155.    CollegeSource has been injured in its business or property by reason of

AcademyOne's foregoing violations of 18 U.S.C. §1962.

156.    WHEREFORE, CollegeSource is entitled to and seeks to recover from defendant

AcademyOne on this cause of action:

        a.     Threefold damages sustained by CollegeSource, in an amount believed to be

        in excess of $3,000,000, pursuant to 18 U.S.C. §1962(c);

        b.     Costs of this suit, including a reasonable attorney's fee, pursuant to 18

        U.S.C. §1962(c);

        c.     Prejudgement interest to the extent allowable;

        d.     Appropriate equitable and injunctive relief, pursuant to, *inter alia*, 18 U.S.C.

        §1962(a), including, but not limited to, preliminary injunctive relief, permanent

        injunctive relief, and appropriate orders, including, but not limited to:  ordering any

        person to divest himself of any interest, direct or indirect, in any enterprise;

        imposing reasonable restrictions on the future activities or investments of any

        person, including, but not limited to, prohibiting any person from engaging in the

        same type of endeavor as the enterprise engaged in, the activities of which affect

        interstate or foreign commerce; or ordering dissolution or reorganization of any

        enterprise, making due provision for the rights of innocent persons;

    e.       Such other or further relief allowed by law; and

    f.        Such other or further relief this Court finds appropriate.

## SECOND CAUSE OF ACTION
(Civil Racketeering)
[18 U.S.C. §1964]

157.    CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 149 of this Complaint as though set forth in this cause of action.

158.    CollegeSource brings this cause of action against defendant Moldoff only.

159.    CollegeSource brings this cause of action pursuant to 18 U.S.C. §1964.

160.    Defendant Moldoff has conducted or participated in the conduct of the affairs of the AcademyOne Enterprise and Noah Enterprise through a pattern of racketeering activity including the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503), in violation of 18 U.S.C. §1962(c).

161.    Defendant Moldoff has conspired to conduct the affairs of the AcademyOne Enterprise and Noah Enterprise through a pattern of racketeering including the interstate transportation and receipt of stolen property (18 U.S.C. §§2314 and 2315), wire fraud (18 U.S.C. §1343) and obstruction of justice (18 U.S.C. §1503), in violation of 18 U.S.C. §1962(d).

162.    CollegeSource has been injured in its business or property by reason of defendant Moldoff's foregoing violations of 18 U.S.C. §1962.

163.    WHEREFORE, CollegeSource is entitled to and seeks to recover from defendant Moldoff on this cause of action:

    a.       Threefold damages sustained by CollegeSource, in an amount believed to be in excess of $3,000,000, pursuant to 18 U.S.C. §1962(c);

b.     Costs of this suit, including a reasonable attorney's fee, pursuant to 18

U.S.C. §1962(c);

c.     Prejudgement interest to the extent allowable;

d.     Appropriate equitable and injunctive relief, pursuant to, *inter alia*, 18 U.S.C.

§1962(a), including, but not limited to, preliminary injunctive relief, permanent

injunctive relief, and appropriate orders, including, but not limited to: ordering any

person to divest himself of any interest, direct or indirect, in any enterprise;

imposing reasonable restrictions on the future activities or investments of any

person, including, but not limited to, prohibiting any person from engaging in the

same type of endeavor as the enterprise engaged in, the activities of which affect

interstate or foreign commerce; or ordering dissolution or reorganization of any

enterprise, making due provision for the rights of innocent persons;

e.     Such other or further relief allowed by law; and

f.     Such other or further relief this Court finds appropriate.

## THIRD CAUSE OF ACTION
### (U.S. Computer Fraud And Abuse Act)
[18 U.S.C. §1030]

164.    CollegeSource incorporates by reference the allegations contained in paragraphs 1

through 38, and 43 through 135, of this Complaint as though set forth herein.

165.    CollegeSource brings this cause of action against defendant AcademyOne only.

166.    For statute of limitations purposes, this cause of action was commenced on October

27, 2008 when it was first filed in the California Action which is currently on appeal following

dismissal for lack of personal jurisdiction. The limitations period has been tolled pursuant to law

and/or equity including, but not limited to, 28 U.S.C §1631.

167.    Each of CollegeSource's Websites, and the Digitized Information thereon, are stored on computers in the State of California that are used in or affecting interstate or foreign commerce or communication. CollegeSource's Websites have subscribers/customers in multiple states throughout the United States as well as other countries. CollegeSource even has military bases and ships-on-the-sea as customers. CollegeSource's computers constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2)(B).

168.    AcademyOne was not authorized, either implicitly or explicitly, to access CollegeSource's Digitized Information for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

169.    AcademyOne's use of the Digitized Information exceeded any authorization provided to use the Digitized Information.

170.    Any authorization AcademyOne had to access the Websites and Digitized Information terminated when AcademyOne used CollegeSource's Digitized Information in an unauthorized way.

171.    CollegeSource reasonably expected that the users of its Websites and Digitized Information would abide by CollegeSource's terms of use disclosed on the Websites and digitized catalogs.

172.    AcademyOne knew, or should have known, that CollegeSource would not have granted AcademyOne access to CollegeSource's Websites and/or Digitized Information if AcademyOne would have informed CollegeSource that AcademyOne intended to use its access to CollegeSource's Websites for the purpose of competing with CollegeSource or other commercial purposes, or to violate the terms of use on CollegeSource's Websites and/or digital catalogs.

173.   Academy One knew as of the time it requested to obtain or use CollegeSource's Digitized Information and was then denied that CollegeSource would not grant AcademyOne commercial use of its Digitized Information.

174.   AcademyOne knew when CollegeSource caught AcademyOne publishing CollegeSource's Digitized Information and demanded its removal that AcademyOne had no authorization to use such information.

175.   On information and belief, AcademyOne knowingly and with an intent to defraud gave false information to access the Digitized Information on CollegeSource's Websites, disregarded CollegeSource's terms of use, and obtained Digitized Information from CollegeSource - which is of great value.

176.   AcademyOne's conduct has caused loss to CollegeSource in an amount aggregating at least $5,000.00 in a one-year period.   The reasonable costs incurred by College Source include, but are not limited to, the cost of responding to the offense and attempting to restore CollegeSource's the data, program, system or information to its condition prior to the offense. Over $5,000 was paid to computer expert Michael Bandemer alone.

177.   Prior to the offense, CollegeSource's data, program, system or information was available solely through authorized access to its California servers.  As a result of the offense, the integrity or availability of CollegeSource's data, program, system or information has been impaired, such that some of CollegeSource's Digitized Information is now on AcademyOne's servers and out of CollegeSource's control.

178.   AcademyOne uses College's Digitized Information without authorization to compete with CollegeSource, increase it market share and increase its revenues to CollegeSource's damage.  CollegeSource has also been damaged by this impairment to the integrity and availability

of its data, program, system or information by incurring reasonable costs (including attorney fees) to restore CollegeSource's data, program, system or information to its condition prior to the offense. CollegeSource has incurred reasonable costs to protect itself from similar offenses in the future.

179. On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(2)(C) by intentionally accessing CollegeSource's protected computer without authorization or exceeding authorized access, and thereby obtaining information from CollegeSource's protected computer.

180. On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(4) by knowingly and with intent to defraud, accessing CollegeSource's protected computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value. The object of the fraud and the thing obtained was CollegeSource's Digitized Information.

181. On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(5)(B) by intentionally accessing CollegeSource's protected computer without authorization, and as a result of such conduct, recklessly causing damage.

182. On information and belief, AcademyOne has violated 18 U.S.C. §1030(a)(5)(C) by intentionally accessing CollegeSource's protected computer without authorization, and as a result of such conduct, causing damage and loss.

183. Pursuant to 18 U.S.C. §1030(g), CollegeSource is entitled to bring a civil action for AcademyOne's violations of 18 U.S.C. §1030.

184. WHEREFORE, CollegeSource is entitled to and seeks:

    a.    Compensatory damages in an amount to be proven at trial, but believed to be in excess of $1,000,000, pursuant to 18 U.S.C. §1030(g);

b.      Injunctive and other equitable relief, including, but not limited to,

preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's

Digitized Information, and a constructive trust over any property which constitutes

or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C.

§1030(g);

c.      Costs of the action; and

d.      Such other and further relief as this Court deems appropriate.

## FOURTH CAUSE OF ACTION
(Breach Of Contract)

185.    CollegeSource incorporates by reference the allegations contained in paragraphs 1

through 38, and 43 through 135, and 165 through 182 of this Complaint as though set forth herein.

186.    CollegeSource brings this cause of action against defendant AcademyOne only.

187.    For statute of limitations purposes, this cause of action was commenced on October

27, 2008 when it was first filed in the California Action which is currently on appeal following

dismissal for lack of personal jurisdiction.  The limitations period has been tolled pursuant to law

and/or equity including, but not limited to, 28 U.S.C §1631.

188.    AcademyOne was on notice of CollegeSource's terms of use on CollegeSource's

Websites and digitized *whole* catalogs (the **"Terms of Use"**).  The Terms of Use were

conspicuously posted on CollegeSource's Websites and digitized *whole* catalogs.  AcademyOne

knew or should have known of CollegeSource's Terms of Use.

189.    On information and belief, AcademyOne had actual knowledge of CollegeSource's

Terms of Use.

190.    By using CollegeSource's Websites and digitized catalogs, AcademyOne agreed to

CollegeSource's Terms of Use.

191.     The Terms of Use on CollegeSource's Websites and digitized catalogs constituted a valid and enforceable contract between CollegeSource and AcademyOne.

192.     Through the conduct set forth above, AcademyOne has breached the Terms of Use on CollegeSource's Websites and digitized catalogs.

193.     CollegeSource has been damaged as a result of AcademyOne's breach of the Terms of Use in an amount to be proven at trial, which includes the loss of contracts and a reasonable royalty from AcademyOne, and believed to be in excess of $1,000,000.

194.     WHEREFORE, CollegeSource is entitled to and seeks:

a.     Any and all damages sustained by CollegeSource from AcademyOne's breach of contract in an amount to be proven at trial, but believed to be in excess of $1,000,000;

b.     Any and all profits of AcademyOne as a result of its breach of contract complained of herein;

c.     The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.     The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.     Costs of the action; and

f.     Such other and further relief as this Court deems appropriate.

**FIFTH CAUSE OF ACTION**

(Unjust Enrichment)

195.    CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 38, and 43 through 135, and 165 through 182 of this Complaint as though set forth herein. of action.

196.    AcademyOne received benefit from CollegeSource and at CollegeSource's expense through AcademyOne's unauthorized receipt and use of CollegeSource's Digitized Information.

197.    AcademyOne's appreciation of the benefit includes, *inter alia*, revenues and saved expenditures relating to the digitizing and compilation of CollegeSource's Information.

198.    AcademyOne accepted and retained the benefit under circumstances that it would be inequitable for AcademyOne to retain the benefit without payment of value to CollegeSource.

199.    WHEREFORE, CollegeSource is entitled to and seeks:

a.      That AcademyOne make restitution for any and all benefits it unjustly received from CollegeSource;

b.      Any and all profits of AcademyOne as a result of its acts complained of herein;

c.      The reasonable value of the Digitized Information taken by AcademyOne from CollegeSource;

d.      The expenditures saved by AcademyOne as a result of its acts complained of herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its Digitized Information;

e.      Costs of the action;

f.      Equitable relief, including, but not limited to, preliminary and permanent injunctions restraining AcademyOne from its further exploitation of the Digitized

Information; and

g.      Such other and further relief as this Court deems appropriate.

## SIXTH CAUSE OF ACTION
### (Infringement of Registered Mark)
### [15 U.S.C. §1114]

200.    CollegeSource incorporates by reference the allegations contained in paragraphs 1

through 38, and 43 through 135, of this Complaint as though set forth in this cause of action.

201.    CollegeSource brings this cause of action against defendant AcademyOne only.

202.    For statute of limitations purposes, this cause of action was commenced on June 19,

2009 when it was first filed in the California Action which is currently on appeal following

dismissal for lack of personal jurisdiction.  The limitations period has been tolled pursuant to law

and/or equity including, but not limited to, 28 U.S.C §1631.

203.    CollegeSource owns all right, title and interest to United States Registration No.

2616166 for the word mark "COLLEGESOURCE," and said registered word mark, for use on: (1)

"Educational services, namely providing an on-line computer database via global computer

information networks in the field of college catalogs;" and (2) "Electronic database in the field of

college catalogs, recorded on microfiche and CD-ROM."

204.    United States Registration No. 2616166 for "COLLEGESOURCE" issued on

September 10, 2002.  Pursuant to 15 U.S.C. §1065, the "COLLEGESOURCE" mark, and

CollegeSource's right to use said mark in commerce, have become incontestible.

205.    Since June of 1994, CollegeSource (or its predecessor CGF) has continuously used

the "COLLEGESOURCE" name and mark in interstate commerce in connection with its

information and data services related to college and university catalogs, which now include, but are

not limited to, information and data services related to curriculums, course descriptions, and

college transfers.

206.    As a result of the continuous use of "COLLEGESOURCE," it has accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify CollegeSource as the source of the products and services offered in connection therewith.

207.    As a result of the continuous use of "COLLEGESOURCE," its has accumulated significant goodwill and wide public recognition, including but not limited to recognition by which CollegeSource is known to the public, including but not limited to students, state educational departments, and educational institutions.

208.    The "COLLEGESOURCE" name and mark has become, and is, a valuable and irreplaceable asset of CollegeSource.

209.    AcademyOne has used CollegeSource's registered "COLLEGESOURCE" mark in commerce in connection with the sale and advertising of AcademyOne's goods and services by purchasing the term "COLLEGESOURCE" from Internet search engines, including, but not limited to, Google, as a term that, when typed into search engines, triggers the appearance of advertisements, higher rankings and links to AcademyOne's www.CollegeTransfer.net website.

210.    On information and belief, AcademyOne purchased the terms "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" from Internet search engines, as set forth above, because of the goodwill in CollegeSource's names and marks and because Internet searchers associate said names and marks with CollegeSource.

211.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, was without CollegeSource's knowledge or consent.

212.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause confusion, cause mistake and/or deceive.

213.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

214.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to create an initial interest in AcademyOne's www.CollegeTransfer.net website, products and/or services.

215.    AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's mark to lead and divert Internet users to AcademyOne's www.CollegeTransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

216.    Through AcademyOne's use of CollegeSource's registered "COLLEGESOURCE" mark, as set forth above, AcademyOne improperly misappropriated and benefitted from CollegeSource's goodwill therein.

217.    On information and belief, AcademyOne, through its conduct set forth above, has willfully and in bad faith attempted to exploit the good will, secondary meaning and public recognition of CollegeSource's registered "COLLEGESOURCE" mark.

218.    AcademyOne, by its acts complained of herein, has infringed CollegeSource's rights in its registered "COLLEGESOURCE" mark.

219.    AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1114.

220.    On information and belief, AcademyOne's infringement of CollegeSource's rights in its registered "COLLEGESOURCE" mark and violation of 15 U.S.C. §1114 was deliberate, knowing, willful and in bad faith.

221.    AcademyOne's acts complained of herein have caused harm and irreparable injury to CollegeSource and its business.

222.    CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

      a.    AcademyOne's profits;

      b.    Any and all damages sustained by CollegeSource;

      c.    Treble damages or profits;

      d.    Costs of the action; and

      e.    Reasonable attorney fees per statute.

### SEVENTH CAUSE OF ACTION
(Lanham Act Unfair Competition)
[15 U.S.C. §1125(a)]

223.    CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 38, and 43 through 135, of this Complaint as though set forth in this cause of action.

224.    CollegeSource brings this cause of action against defendant AcademyOne only.

225.    For statute of limitations purposes, this cause of action was commenced on June 19, 2009 when it was first filed in the California Action which is currently on appeal following dismissal for lack of personal jurisdiction.  The limitations period has been tolled pursuant to law and/or equity including, but not limited to, 28 U.S.C §1631.

226.    CollegeSource owns all right, title and interest to the "COLLEGESOURCE" and

"CAREER GUIDANCE FOUNDATION" names and marks for use on or in connection with information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, and college transfers.

227.   Since June of 1994, CollegeSource (or its predecessor CGF) has continuously used the "COLLEGESOURCE" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, and college transfers.

228.   Since at least 1980, CollegeSource (or its predecessor CGF) has continuously used the "CAREER GUIDANCE FOUNDATION" name and mark in interstate commerce in connection with its information and data services related to college and university catalogs, which now include, but are not limited to, information and data services related to curriculums, course descriptions, and college transfers.

229.   As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify a single source of the products and services offered in connection therewith.

230.   As a result of the continuous use of "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION," they have accumulated significant goodwill and acquired a secondary meaning in the mind of the public to identify CollegeSource as the source of the products and services offered in connection therewith.

231.   As a result of the continuous use of "COLLEGESOURCE" and "CAREER

GUIDANCE FOUNDATION," they have accumulated significant goodwill and wide public recognition, including but not limited to recognition by which CollegeSource is known to the public, including but not limited to students, state educational departments, and educational institutions.

232.    By virtue of the continuous use of the name and mark "CAREER GUIDANCE FOUNDATION" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "CAREER GUIDANCE FOUNDATION."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "CAREER GUIDANCE FOUNDATION" alleged herein.

233.    By virtue of the continuous use of the name and mark "COLLEGESOURCE" in commerce, and the goodwill, consumer recognition and secondary meaning resulting therefrom, CollegeSource has acquired a valuable and protected mark in "COLLEGESOURCE."  Such consumer recognition and secondary meaning came into existence before any of the acts of infringement of "COLLEGESOURCE" alleged herein.  CollegeSource's rights in and to "COLLEGESOURCE" as a result of its use in commerce, as set forth above, are in addition to its rights in its registered "COLLEGESOURCE" mark.

234.    AcademyOne has used CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks in commerce in connection with the sale and advertising of AcademyOne's goods and services by purchasing the terms "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" from Internet search engines, including, but not limited to, Google, as terms that, when typed into said search engines, trigger the appearance of advertisements, higher rankings and links to AcademyOne's www.CollegeTransfer.net website.

235.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, was without CollegeSource's knowledge or consent.

236.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, constitutes a false designation of origin, false or misleading description of fact or a false or misleading representation of fact which:

      a.   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of AcademyOne with CollegeSource, or as to the origin, sponsorship, or approval of AcademyOne's goods, services, or commercial activities by CollegeSource, and

      b.   misrepresents the nature, characteristics or qualities of AcademyOne's goods, services, or commercial activities.

237.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause confusion, cause mistake and/or deceive in that Internet users, initially seeking CollegeSource's website(s), may believe that AcademyOne's advertisements and/or links are links to CollegeSource's website(s) or websites sponsored by or affiliated with CollegeSource, and/or that AcademyOne's advertisements, links and/or website are sponsored by or affiliated with CollegeSource.

238.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to create an initial interest in AcademyOne's www.CollegeTransfer.net website, products and/or services.

239.   AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION"

and "COLLEGESOURCE" marks, as set forth above, is likely to cause initial interest confusion in that it capitalizes on the goodwill in CollegeSource's marks to lead and divert Internet users to AcademyOne's www.CollegeTransfer.net website, on which AcademyOne offers products and/or services, that would otherwise have proceeded to CollegeSource's website(s).

240.    Through AcademyOne's use of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, as set forth above, AcademyOne improperly misappropriated and benefitted from CollegeSource's goodwill therein.

241.    On information and belief, AcademyOne, through its conduct set forth above, has willfully and in bad faith attempted to exploit the good will, secondary meaning and public recognition of CollegeSource's "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks.

242.    AcademyOne, by its acts complained of herein, has infringed CollegeSource's rights in its "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks.

243.    AcademyOne, by its acts complained of herein, has violated 15 U.S.C. §1125(a).

244.    On information and belief, AcademyOne's infringement of CollegeSource's rights in its "CAREER GUIDANCE FOUNDATION" and "COLLEGESOURCE" marks, and violation of 15 U.S.C. §1125(a), was deliberate, knowing, willful and in bad faith.

245.    AcademyOne's acts complained of herein have caused harm and irreparable injury to CollegeSource and its business.

246.    CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

      a.    AcademyOne's profits;

      b.    Any and all damages sustained by CollegeSource;

    c.     Treble damages or profits;

    d.     Costs of the action; and

    e.     Reasonable attorney fees per statute.

**EIGHTH CAUSE OF ACTION**
(Lanham Act False Advertising)
[15 U.S.C. §1125(a)]

247.    CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 38, and 43 through 135, of this Complaint as though set forth in this cause of action.

248.    CollegeSource brings this cause of action against defendant AcademyOne only.

249.    Defendant AcademyOne has made false or misleading statements and omissions as to its products and services.

250.    AcademyOne falsely represented that "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever related thereto." In AcademyOne's response to the RFP, AcademyOne did not disclose that its website and database(s) offered in response to the RFP were populated with Digitized Information stolen from CollegeSource.

251.    AcademyOne's false or misleading statements and omissions in response to the RFP actually deceived, or at least had the tendency to deceive, its intended audience, which was the South Carolina Department of Higher Education.

252.    Defendant AcademyOne's false or misleading statements and omissions in its response to the RFP were made knowingly and with the intent to deceive the South Carolina Department of Higher Education into believing that AcademyOne was the sole owner of the contents of its database and website offered in response to the RFP. At the very minimum, AcademyOne's misrepresentations or omissions were the result of a reckless disregard for the

truth.

253.    The deception caused by AcademyOne's false or misleading statements and omissions in response to the RFP was material, in that it was likely to influence purchasing decisions.

254.    AcademyOne was awarded a contract with the South Carolina Department of Higher Education as a result of its response to the RFP and the false and misleading representations or omissions contained therein.  The value of the contract was estimated at $2,688,333.00.

255.    On information and belief, the South Carolina Department of Higher Education would not have granted AcademyOne a contract in response to the RFP if AcademyOne had disclosed that its website and database(s) offered in response to the RFP were populated with Digitized Information stolen from CollegeSource.

256.    On information and belief, the South Carolina Department of Higher Education would not have granted AcademyOne a contract in response to the RFP if AcademyOne had not falsely represented that "AcademyOne is the sole owner of...all databases and all...copyrights and other proprietary rights of any kind or nature whatsoever related thereto."

257.    AcademyOne's goods and services offered in response to the RFP traveled and were offered to consumers in interstate commerce via the Internet.

258.    CollegeSource was harmed by AcademyOne's false or misleading statements and omissions in response to the RFP.  AcademyOne was awarded a contract as a result of its false or misleading statements and omissions, which caused CollegeSource competitive harm.  On information and belief, CollegeSource would have been awarded a contract with the South Carolina Department of Higher Education.

259.    AcademyOne's false or misleading statements and omissions in response to the RFP

constituted false advertising in violation of 15 U.S.C. §1125(a).

260.   CollegeSource is entitled to and seeks to recover all remedies available to it pursuant to 15 U.S.C §1117, including, without limitation:

        a.      AcademyOne's profits;

        b.      Any and all damages sustained by CollegeSource;

        c.      Treble damages or profits;

        d.      Costs of the action; and

        e.      Reasonable attorney fees per statute.

### NINTH CAUSE OF ACTION
(Declaration of Trademark Invalidity)
[28 U.S.C. §2201]

261.   CollegeSource incorporates by reference the allegations contained in paragraphs 1 through 38, and 43 through 135, of this Complaint as though set forth in this cause of action.

262.   On July 3, 2009, while the California Action and Pennsylvania Action were pending, AcademyOne filed its Application Serial No.77774054 with the USPTO to register "CollegeTransfer.net" as a service mark.

263.   AcademyOne chose "CollegeTransfer.net" to correspond with the nature of its products.

264.   AcademyOne chose "CollegeTransfer.net" to correspond with the nature of its services.

265.   In the Application, AcademyOne falsely represented that it first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005."

266.   AcademyOne's representation in the Application that it first used "CollegeTransfer.net" "at least as early as 12/01/2005" was false and AcademyOne knew it to be

false.

267.    AcademyOne did not use CollegeTransfer.net in commerce until March of 2007.

268.    AcademyOne's representation in the Application that it first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" was made with the willful intent to deceive the USPTO into issuing a service mark registration to AcademyOne with a first use date of 12/01/2005.

269.    AcademyOne's representation in the Application that it first used "CollegeTransfer.net" in commerce "at least as early as 12/01/2005" constitutes fraud on the USPTO.

270.    On July 8, 2009, the USPTO issued a "Notice of Pseudo Mark" for AcademyOne's Application, assigning "College Transfer" to AcademyOne's Application for registration of "CollegeTransfer.net."

271.    On September 29, 2009, the USPTO issued an "Office Action" rejecting AcademyOne's application.

272.    On December 21, 2009, the Court in the Pennsylvania Action granted CollegeSource's motion for summary judgment and dismissed the Pennsylvania Action.  After considering the evidentiary submissions of the parties, the Court found, *inter alia*:

   a.    "AcademyOne urges us to consider 'collegetransfer' as distinct from 'college [space] transfer' and, thus, more prone to misinterpretation. However, given that domain names never have spaces between otherwise distinct words, this argument is simply unpersuasive.";

   b.    "AcademyOne cites no record evidence that could potentially support its assertion that there is no commonly understood meaning for the phrase 'college

transfer,' e.g., evidence that the phrase 'college transfer' is used to refer to things other than transfer from one educational institution to another or evidence that individuals are genuinely confused as to the meaning of 'collegetransfer.'"; and

c.      "Nevertheless, what is crystal clear from the record is that collegetransfer.net offers services to students transferring from one academic institution to another and to academic institutions that accept transfer students, and that the services concern the college transfer process."

273.    AcademyOne was aware of the Order in the Pennsylvania Action granting CollegeSource's motion for summary judgment.  Said Order was served on AcademyOne on or around December 21, 2009.

274.    On March 29, 2010, AcademyOne responded to the USPTO's September 29, 2009 Office Action and requested that its Application for registration of "CollegeTransfer.net" be moved to the Supplemental Register.

275.    AcademyOne's March 29, 2010 response failed to inform the USPTO of the Court's Order in the Pennsylvania Action granting CollegeSource's motion for summary judgment. AcademyOne also failed to submit to the USPTO any of the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment.

276.    AcademyOne was under the duty to disclose to the USPTO the Court's Order granting CollegeSource's motion for summary judgment in the Pennsylvania Action. AcademyOne was also under the duty to disclose to the USPTO the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment.

277.    AcademyOne intended for the USPTO to rely upon the foregoing omissions in its March 29, 2010 response and issue AcademyOne a service mark registration for

"CollegeTransfer.net" to which AcademyOne was not entitled.

278.   AcademyOne's failure to inform the USPTO of the Court's Order in the Pennsylvania Action granting CollegeSource's motion for summary judgment and/or failure to submit to the USPTO any of the evidence submitted by CollegeSource in connection with CollegeSource's successful motion for summary judgment constitutes fraud on the USPTO.

279.   On May 25, 2010, the USPTO granted the Application for the Supplemental Register and issued a trademark registration for "CollegeTransfer.net" thereon, Registration No. 3795258 (the **"Registration"**).

280.   The Registration lists AcademyOne's first use of "CollegeTransfer.net" in commerce as December 1, 2005.

281.   In issuing the Registration, the USPTO relied upon AcademyOne's statements in the Application and March 29, 2010 response to the USPTO's Office Action.

282.   AcademyOne is not entitled to the Registration because its claimed mark in "CollegeTransfer.net" is generic.  "College Transfer" functions as the common descriptive name of a product class or genus.

283.   AcademyOne is not entitled to a registration for "CollegeTransfer.net" with a first use date of 12/01/2005.

284.   There is an actual and substantial controversy between CollegeSource and AcademyOne regarding AcademyOne's purported rights in "CollegeTransfer.net."  This controversy is evidenced by, *inter alia*, AcademyOne's unsuccessful claim in the Pennsylvania Action that CollegeSource had infringed AcademyOne's purported rights in "CollegeTransfer.net."

285.   CollegeSource seeks a judicial declaration, pursuant to 28 U.S.C. §2201, that the

Registration is void for reason of fraud on the USPTO.

286.    CollegeSource seeks a judicial declaration, pursuant to 28 U.S.C. §2201, that the

Registration is void for reason that "CollegeTransfer.net" is generic.

287.    CollegeSource seeks a judicial declaration, pursuant to 28 U.S.C. §2201, that

AcademyOne does not have any trademark rights or service mark rights in "CollegeTransfer.net."

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CollegeSource is entitled to and seeks relief against defendant

AcademyOne and defendant Moldoff, and each of them, as more fully detailed in each Cause of

Action above, as follows:

1.    For threefold damages sustained by CollegeSource, in an amount believed to be in

excess of $3,000,000, pursuant to 18 U.S.C. §1962(c);

2.    For Compensatory damages in an amount to be proven at trial, but believed to be in

excess of $1,000,000, pursuant to 18 U.S.C. §1030(g);

3.    For any and all damages sustained by CollegeSource from AcademyOne's breach of

contract in an amount to be proven at trial, but believed to be in excess of $1,000,000;

4.    For any and all profits of AcademyOne as a result of its breach of contract

complained of herein;

5.    For the reasonable value of the Digitized Information taken by AcademyOne from

CollegeSource;

6.    For the expenditures saved by AcademyOne as a result of its acts complained of

herein, including, but not limited to, CollegeSource's costs to collect, compile and convert its

Digitized Information;

7.    For AcademyOne's profits from its violations of 15 U.S.C. §1125(a) alleged herein,

pursuant to 15 U.S.C §1117;

8.      For any and all damages sustained by CollegeSource as a result of AcademyOne's violations of 15 U.S.C. §1125(a) alleged herein, pursuant to 15 U.S.C §1117;

9.      For treble CollegeSource's damages and AcademyOne's profits from resulting from AcademyOne's violations of 15 U.S.C. §1125(a) alleged herein, pursuant to 15 U.S.C §1117;

10.     For AcademyOne's profits from its violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C §1117;

11.     For any and all damages sustained by CollegeSource as a result of AcademyOne's violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C §1117;

12.     For treble CollegeSource's damages and AcademyOne's profits from resulting from AcademyOne's violations of 15 U.S.C. §1114 alleged herein, pursuant to 15 U.S.C §1117;

13.     For costs of this suit;

14.     For payment of CollegeSource's reasonable attorney fees, to the extent allowed by law, including, without limitation, 18 U.S.C. §1962(c) and 15 U.S.C §1117(a);

15.     For prejudgement interest to the extent allowable;

16.     For appropriate equitable and injunctive relief, pursuant to, *inter alia*, 18 U.S.C. §1962(a), including, but not limited to, preliminary injunctive relief, permanent injunctive relief, and appropriate orders, including, but not limited to:  ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons;

17.     For injunctive and other equitable relief, including, but not limited to, preliminary and permanent injunctions, forfeiture or seizure of CollegeSource's Digitized Information, and a constructive trust over any property which constitutes or is derived from CollegeSource's Digitized Information, pursuant to 18 U.S.C. §1030(g);

18.     For injunctive and other equitable relief pursuant to the court's inherent power, including, but not limited to, preliminary and permanent injunctions.

19.     For a judicial declaration, pursuant to 28 U.S.C. §2201, that USPTO Registration No. 3795258 is void for reason of fraud on the USPTO;

20.     For a judicial declaration, pursuant to 28 U.S.C. §2201, that USPTO Registration No. 3795258 is void for reason that "CollegeTransfer.net" is generic;

21.     For a judicial declaration, pursuant to 28 U.S.C. §2201, that AcademyOne does not have trademark rights or service mark rights in "CollegeTransfer.net."

22.     For such other or further relief allowed by law; and

23.     For such other or further relief this Court finds appropriate.

Dated: July 19, 2010

William F. Woods, Esquire
750 State Street, Suite 310
San Diego, California 92101

LAW OFFICES OF DARREN J. QUINN
Darren J. Quinn
Alexander E. Papaefthimiou
12702 Via Cortina, Suite 105
Del Mar, California 92014
Fax: (858) 509-9401

RESPECTFULLY SUBMITTED,

CONRAD O'BRIEN PC

/s/ Frank R. Emmerich Jr.
John A. Guernsey
Frank R. Emmerich Jr.
1515 Market Street - 16th Floor
Philadelphia, Pennsylvania
Telephone: (215) 864-8086
Fax: (215) 864-9620

*Attorneys for Plaintiff CollegeSource, Inc.*

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues and causes of action so triable.

Dated: July 19, 2010

RESPECTFULLY SUBMITTED,

William F. Woods, Esquire
750 State Street, Suite 310
San Diego, California 92101

CONRAD O'BRIEN PC

/s/ Frank R. Emmerich Jr.
John A. Guernsey
Frank R. Emmerich Jr.
1515 Market Street - 16th Floor
Philadelphia, Pennsylvania
Telephone: (215) 864-8086
Fax: (215) 864-9620

LAW OFFICES OF DARREN J. QUINN
Darren J. Quinn
Alexander E. Papaefthimiou
12702 Via Cortina, Suite 105
Del Mar, California 92014
Fax: (858) 509-9401

*Attorneys for Plaintiff CollegeSource, Inc.*

## VERIFICATION

I am the Chief Executive Officer of plaintiff COLLEGESOURCE, INC.  To the best of my personal knowledge and information,  the factual allegations (to the extent not alleged on information and belief) in the **Verified Complaint** are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Kerry Cooper