# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| COLLEGESOURCE, INC., a California corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action: 10-cv-3542-MAM |
| | : | |
| ACADEMYONE, INC., a Pennsylvania corporation, and DAVID K. MOLDOFF, an individual, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CONDUCT ADDITIONAL DISCOVERY

William F. Woods, Esquire
3510 Front Street, #2F
San Diego, CA, 92103

LAW OFFICES OF DARREN J. QUINN
Darren J. Quinn
Alexander E. Papaefthimiou
12702 Via Cortina, Suite 105
Del Mar, California 92014
Fax: (858) 509-9401

CONRAD O'BRIEN PC
John A. Guernsey
Frank R. Emmerich Jr.
1515 Market Street - 16th Floor
Philadelphia, Pennsylvania
Telephone: (215) 864-8086
Fax: (215) 864-9620

TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      CollegeSource Diligently Reviews The Apple Server (ACA-PA 3502) That
                Contains 248,983 Native Files and 284 GB of Data . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      Newly Uncovered Evidence Of The China Team's IP Addresses Leads To Evidence
                Of Defendant Accessing Catalogs On CollegeSource's Servers. . . . . . . . . . . . . . . 7

                1.      CollegeSource Unsuccessfully Sought Defendant's IP Address Information
                        In Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.      CollegeSource Recently And Unexpectedly Discovers References To
                        Defendant's China Team Associated With IP Addresses. . . . . . . . . . . . . . 8

                3.      CollegeSource Searches Its Server Logs For The IP Addresses Of
                        Defendant's China Team And Uncovers The Unauthorized Use of Two
                        Subscriber Usernames/Passwords. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      CollegeSource Recently Uncovered Defendant's Non-Production And/Or Deletion
                Of Tens Of Thousands Of Files From Its Apple Server. . . . . . . . . . . . . . . . . . . . 10

III.    GOVERNING STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      The Court Has The Inherent Discretion To Allow CollegeSource To Supplement Its
                Opposition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      The Court Has The Discretion To Allow CollegeSource To Supplement Its
                Opposition And Serve Discovery, Pursuant To F.R.C.P. 6(b)(1)(B). . . . . . . . . . . 15

        C.      The Court May Allow CollegeSource To Supplement Its Opposition And Serve
                Discovery If The Court Finds That CollegeSource Has Not Addressed Defendant's
                Assertions Of Fact, Pursuant To F.R.C.P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . 17

        D.      The Court Has The Discretion To Modify Its Scheduling Order To Reopen
                Discovery And Allow CollegeSource To Serve Limited Discovery, Pursuant To
                F.R.C.P. 16(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.     THE RELEVANT CIRCUMSTANCES REQUIRE THAT COLLEGESOURCE BE
        ALLOWED TO SUPPLEMENT ITS OPPOSITION AND SERVE DISCOVERY. . . . . . 20

A.    CollegeSource Had A Reasonable Basis For Not Filing Its Opposition Sooner Or Requesting The Additional Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.    CollegeSource Relied Upon Defendant's Representations And Response To This Court's Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    2.    CollegeSource Had No Reason To Believe That Its Search Utility Was Not Reaching All Of The Data Produced By Defendant. . . . . . . . . . . . . . . . . . 22

    3.    CollegeSource Required Time To Examine The 248,983 Native Files Contained in the 284 GB Hard Drive Dumped Upon It By Defendant. . . . 23

B.    CollegeSource Acted Diligently And In Good Faith. . . . . . . . . . . . . . . . . . . . . . . 24

C.    The Delay In CollegeSource's Opposition And Discovery Will Not Negatively Impact These Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.    CollegeSource Will Be Substantially Prejudiced If It Is Not Allowed To Supplement Its Summary Judgment Opposition And Obtain Additional Discovery. . . . . . . . . 26

E.    Discovery Should Be Reopened to Follow Up On The Newly Uncovered Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Plaintiff CollegeSource, Inc. (**"CollegeSource"**) respectfully submits the following Memorandum in support of its Motion for Leave to Supplement Opposition to Defendant's Motion for Summary Judgment and Conduct Additional Discovery.

## I.   INTRODUCTION

Imagine trying to locate a person on a continent of over 1.6 ***billion*** people without any address information.  This is analogous CollegeSource trying to locate instances of defendant or its China contractors (the **"China Team"**) accessing CollegeSource's computers in CollegeSource's server logs containing over 1.6 ***billion*** server log entries without an IP address to identify such access.

CollegeSource's server logs represent approximately 1,884 gigabytes of data,  2,542 separate log files and 1,642,399,000 server log entries.  Weil Decl.[1], ¶4.  CollegeSource's logs were not relevant in this litigation until the IP address[2] information for defendant and its China Team was known.  Quinn Decl.[3], ¶¶2 and 5 and Ex. D.  Defendant requested CollegeSource's server logs in discovery.  CollegeSource provided a sample page of its server logs.   Quinn Decl., Ex. A. During a meet and confer, defendant's counsel stated that it had no IP information for defendant and its China Team, so both parties agreed that CollegeSource's server logs were not relevant at that time.  Defendant never moved to compel CollegeSource's server logs.  Quinn Decl. ¶2.

---

[1]     All references to "Weil Decl." refer to the Declaration of Michael Weil, filed concurrently.

[2]   "An IP address is a unique series of numbers which identifies every computer on the internet." *United States v. Vaskas*, 2012 U.S. Dist. LEXIS 122792 at *3 fn1 (E.D. Pa. 2012).

[3]     All references to "Quinn Decl." refer to the concurrently submitted under seal Declaration of Darren J. Quinn Re: Newly Uncovered Evidence.

Through discovery, CollegeSource sought to confirm defendant's counsel's representation that defendant had no IP address information for defendant or its China Team.  In response to a person most knowledgeable deposition regarding such IP address information, defendant's President David Moldoff did not identify any IP addresses.  Quinn Decl., ¶3 and Exs. B and C. Even in response to an order of this Court requiring the production of documents reflecting such IP address information, defendant filed a supplemental response that "AcademyOne never had such [IP address] information in its possession" and "AcademyOne has no information regarding [the China Team's] computers, locations, or how [the China Team] connected to the internet." [Docket No. 157 (Defendant's Supplemental Response), at pdf 11-12]

Without the IP addresses for defendant and its China Team, CollegeSource was at a dead end with respect to using its server logs to identify access to catalogs on its server.  Plaintiff's expert opined:

> Examination of CSI's web-server log could identify additional significant facts regarding the original theft or download of CSI files. The IP addresses used by A1 and its affiliates have not been made available to Huron or CSI. If these IP addresses are known by A1 and were given to Huron it may be possible to identify who downloaded CSI data and when. The IP addresses are required to identify relevant entries from over 100 million server log records

Quinn Decl., Ex. D.

Very recently –  in a "lottery" or "needle-in-a-haystack" moment -- CollegeSource's Director of Operations (Stan Novak) uncovered IP address information for defendant's China Team in FTP logs produced by defendant that were buried within defendant's production of "350 gigabytes of data in electronic form and more than 50,000 pages of documents." [Docket No. 105-1 (Landau Decl.), ¶6)]  This is despite defendant's apparently false representation in response to the Court's compel Order, that "the functionality on AcademyOne's FTP server which could log IP

addresses was never enabled." [Docket No. 157 at 12]

Once CollegeSource had IP addresses for defendant's China Team, CollegeSource very rapidly determined access to catalogs on CollegeSource's server through those China Team IP addresses. This in turn lead to the discovery that defendant's China Team IP addresses used the username and password of CollegeSource subscribers Bellmore Memorial Library (outside New York City) and Santa Fe College (Gainesville, FL) without authorization. This in turn rapidly lead to the discovery of an IP address associated with defendant accessing CollegeSource catalogs with the Bellmore Memorial Library username/password. Through reverse IP lookup information, it became evident that an IP address for defendant's law firm (Duane Morris) also accessed a CollegeSource catalog, on April 23, 2012, using the Bellmore Memorial Library's username/password.[4]  Novak. Dec.[5], ¶31 and Weil Decl., ¶9 and Ex. A.

Had defendant provided IP address information to CollegeSource at deposition, in response to CollegeSource's discovery, or in response to the Court's Order on CollegeSource's motion to compel, CollegeSource could have included server log evidence in its original summary judgment opposition papers timely filed April 6, 2012, based upon the quick turn around by CollegeSource once it uncovered the China Team IP address information on August 2, 2012. Quinn Decl, ¶6. Indeed, CollegeSource may have, itself, moved for summary judgment.

CollegeSource cannot be faulted for seeking to supplement its summary judgment opposition with this information now through this motion. If CollegeSource can be faulted at all, its fault is excusable in light of its diligence and defendant's false representations. Given the

---

[4]     CollegeSource has requested an explanation from defendant's counsel, and currently makes no claim against counsel based upon access by counsel's IP address.

[5]     All references to "Novak Decl." refer to the concurrently submitted under seal Declaration of Darren J. Quinn Re: Newly Uncovered Evidence.

evidence now uncovered, defendant should have simply admitted early on that it and its China Team used the usernames and passwords of CollegeSource's subscribers to access CollegeSource's catalogs.  Instead, defendant chose to rely upon its false "public sources" representations in both this action and the California Action,[6] sought to dismiss the first-filed California Action for lack of personal jurisdiction, opposed plaintiff's motion for preliminary injunction and filed defendant's pending summary judgment motion.

To make matters worse, College Source recently uncovered evidence indicates that defendant had "smoking gun" documents in its possession, custody or control, including documents with names such as "B20910_Institutions_With_CollegeSource_Source.xlsx" and "CS dirty data.xlsx."  Novak Decl., Ex. K.  Unfortunately, due to defendant's apparent misconduct, this is a situation of a "smoking holster" rather than a "smoking gun."  A recently uncovered Windows Change Journal file indicates that those files (along with over 14,000 other native files) were deleted by defendant on February 14, 2011 from its Apple Server.  Novak Decl., ¶33.  The Windows Change Journal file indicates that over 88,000 files from defendant's Apple Server were not produced and/or deleted.  Novak Decl., ¶31(d).  Defendant's conduct in deleting thousands of files from its Apple Server appears to violate this Court's August 4, 2010 Order that provides, in part: "It is FURTHER ORDERED that *there shall be no destruction of any documents or data, by either party, that may be related in any way to the subject matter of this litigation*." [Docket No. 29, at pdf 1 (emphasis added)] CollegeSource cannot be faulted for not discovering over 88,000 not produced and/or deleted files from defendant's Apple Server, given its reliance upon the

---

[6] This motion is without prejudice to CollegeSource's pending consolidated Ninth Circuit appeals of the orders staying the first-filed California Action and declining to enjoin this second-filed action.  On September 11, 2012, this Court denied CollegeSource's request to stay or put this action on suspense docket pending the Ninth Circuit appeals. [Docket No. 219, at 15:25-16:1 (C: "So I'm not going to stay it for the Ninth Circuit decision.")]

Court's order and defendant's apparent noncompliance therewith.  Any fault by CollegeSource is also excusable given defendant's representations to CollegeSource and the Court that the Apple Server produced in discovery contained all files or virtually all files.

Thus, CollegeSource cannot be faulted for seeking to supplement its summary judgment opposition with deleted file information now through this motion.  Such evidence, at a minimum, creates a spoilation inference requiring that defendant's summary judgment motion be denied on all claims. At a maximum, default judgment may be entered against defendant.

Finally, unless defendant's default is entered, discovery should be reopened to allow CollegeSource to follow up on all of this newly uncovered evidence.  Defendant should not receive a free pass due to its obfuscatory conduct aimed at covering up its footprints.

## II.     RELEVANT FACTS

### A.     CollegeSource Diligently Reviews The Apple Server (ACA-PA 3502) That Contains 248,983 Native Files and 284 GB of Data

On July 26, 2011, defendant produced, as ACA-PA 3502, a hard drive containing over 284 gigabytes of data and 248,983 native files (the **"Apple Server"**). Quinn Decl., ¶ 7 and Novak Decl.,, ¶3.  Defendant relies upon the supposed completeness of the Apple Server in a declaration filed by its President, David Moldoff, in support of its motion for summary judgment. *See* D Appendix[7], Ex. 3 (Moldoff Decl. 2/27/12), ¶13 (emphasis added)]

Upon receipt of the Apple Server (ACA-PA 3502) in 2011, CollegeSource immediately began analyzing the native files thereon.  CollegeSource's Director of Operations (Stan Novak)  used Windows Explorer to determine that the Apple Server contained 248,983 native files and 9 folders,

---

[7]      All references to the "D. Appendix" refer to Defendant's Consolidated Appendix of Exhibits to Memoranda in Support of AcademyOne's Motion for Summary Judgment, Motion to Preclude Expert Testimony of Michael Bandemer, and Motion to Preclude Expert Testimony of Mark Gallagher.

representing 284 GB (305,838,166,016 bytes) of data.   He also created an inventory of the files on

Apple Server (ACA-PA 3502) to facilitate review of those files.   He and others devoted substantial

portions of their working day to analyze the 248,983 files on the drive.  Novak Decl., ¶4.

Because of the enormous amount of time it would take to open each of the 248,983 native files

individually, Mr. Novak used Windows Explorer to conduct searches on the Apple Server (ACA-PA

3502) for key words such as "CollegeSource" and "China."  Mr. Novak's searches on Windows

Explorer yielded results.  Novak Decl., ¶¶4-6.

Windows Explorer did ***not*** provide any warning message that certain files were not searched

or could not be read, so Mr. Novak believed that the searches were comprehensive.  Novak Decl., ¶4.

Mr. Novak's keyword searches for "collegesource"  with the Windows Explorer search utility did not

detect or search the "hidden" Windows system file "$UsnJrnl•$J."  Novak Decl.¶6.  Mr. Novak's

keyword searches with the Windows Explorer search utility did not detect references to the China

Team in defendant's log files. Novak Decl., ¶6.  These results of these Windows Explorer search were

re-ran and verified for the purpose of this motion.  Novak Decl. ¶6.

Because of the enormous size of the Apple Server (ACA-PA 3502), CollegeSource's counsel,

Darren Quinn, had it analyzed with eScan-It software by Eric Peltola of CopyScan.  This process took

several days.   After consultation with Mr. Peltola, Mr. Quinn determined that review of the files in

their native format would be more effective and efficient than having them processed by CopyScan

with e-discovery software.  Quinn Decl. , ¶8.

Mr. Quinn performed his own searches of the Apple Server (ACA-PA 3502) with Windows

Explorer software, which yielded the same results.  Mr. Quinn had no idea that certain files were not

searched or could not be read by Windows Explorer, because there was no warning to that effect.

Quinn Decl.  No one had ever cautioned him not to use Windows Explorer to search the content of

native files.  Quinn Decl., ¶9.

**B.      Newly Uncovered Evidence Of The China Team's IP Addresses Leads To Evidence Of Defendant Accessing Catalogs On CollegeSource's Servers**

**1.      CollegeSource Unsuccessfully Sought Defendant's IP Address Information In Discovery**

CollegeSource noticed a Rule 30(b)(6) person most knowledgeable deposition requiring testimony by defendant on, *inter alia*:

6.      The IP addresses you used to access plaintiff's computers or servers.

7.      The IP addresses your agents (including the China contractor) used to access plaintiff's computers or servers.

Quinn Decl., Ex. B (PMK Notice).  Defendant's designee (Mr. Moldoff) did not identify any responsive IP addresses.  Quinn Decl., Ex. C (Moldoff 10/19/11 Depo. ), at p. 9:19-17:7.

Later, this Court granted CollegeSource's motion to compel Document Request No. 23, which required defendant to produce: "Documents sufficient to identify the usernames, passwords and IP addresses of all accounts used by you to access CollegeSource Online or TES data." [Docket No. 138 (Motion to Compel), at p. 8 (Request 23) and Docket No. 155 (Order), at ¶9.  In response, defendant filed a supplemental response to Request No. 23 indicating, *inter alia*, **"AcademyOne never had such [IP address] information in its possession"** and **"AcademyOne has no information regarding [the China Team]'s computers, locations, or how [the China Team] connected to the internet."** [Docket No. 157 (Defendant's Supplemental Response), at pdf 11-12]  Defendant's response was also silent as to usernames and passwords. *Id*.

As a result, CollegeSource had nothing to search for in its server logs, containing over 1.6 billion entries, for access by defendant or its China Team.

\\

---

2.     **CollegeSource Recently And Unexpectedly Discovers References To Defendant's China Team Associated With IP Addresses**

On the evening of August 2, 2012, in a "lottery" or "needle-in-a-haystack" moment, CollegeSource's Director of Operations (Stan Novak) came across a reference to defendant's China Team, with an associated IP address, while spot checking some AcademyOne FTP .log files and randomly paging through some of them. Novak Decl., ¶12.  Thus, defendant's statement that **"the functionality on AcademyOne's FTP server which could log IP addresses was never enabled,"** contained in its Court ordered supplemental response to Request No. 23 and upon which CollegeSource had previously relied, was apparently false.  Novak Decl., ¶13; *See* [Docket No. 157 (Defendant's Supplemental Response), at pdf 12].   Defendant knew and had access to the China Team's IP addresses.

Defendant's .log files on its AppleServer (ACA-PA 3502) were small individual daily files out of a 284 GB (305,838,166,016 bytes) production, making the .log file Mr. Novak found about 1/2,840,000 of defendant's production in terms of size.  Novak Decl., ¶12.  The .log file Mr. Novak randomly paged through was one of 248,983 files on the Apple Server (ACA-PA 3502). CollegeSource's keyword searches in August of 2011 with Windows Explorer had not uncovered these log files.  Novak Decl., ¶6.  Given defendant's representations, the enormous quantity of files on the Apple Server (ACA-PA 3502), and CollegeSource's electronic keyword searches, it is remarkable Mr. Novak was able to locate a reference to defendant's China Team associated with an IP address.

The next day, August 3, 2012, Mr. Novak searched all of defendant's .log files for defendant's China Team and associated IP addresses.  Mr. Novak located 61 China Team IP addresses. Novak Decl., ¶14.

### 3.   CollegeSource Searches Its Server Logs For The IP Addresses Of Defendant's China Team And Uncovers The Unauthorized Use of Two Subscriber Usernames/Passwords

Once CollegeSource had identified IP addresses for defendant's China Team, it was rapidly able to recognize access to catalogs on CollegeSource's server through those China Team IP addresses. This in turn lead to the discovery that defendant's China Team IP addresses used the username and password of CollegeSource subscribers Bellmore Memorial Library (outside New York City) and Santa Fe College (Gainesville, FL) without authorization. This in turn rapidly lead to the discovery of an IP address associated with defendant accessing CollegeSource catalogs with the Bellmore Memorial Library username/password. Through reverse IP lookup information, it was even discovered that an IP for defendant's law firm (Duane Morris) accessed a CollegeSource catalog on April 23, 2012 using the Bellmore Memorial Library username/password. Novak Decl., ¶27.

To facilitate searching, the CollegeSource server logs were provided to computer expert Michael Bandemer to load the server entries into a SQL database. Mr. Bandemer's firm provided the results of three searches of the SQL database in Excel format reflecting certain IP addresses for: (1) the 61 "a1chinateam" IP addresses; (2) an IP address of defendant; and (3) IP addresses for defendant's law firm Duane Morris

Based upon the extracts of server log entries by Mr. Bandemer's firm, CollegeSource has evidence that 607 CollegeSource pdf catalogs were accessed on CollegeSource's server by the IP addresses of defendant, defendant's China Team and/or defendant's counsel. Novak Decl., Ex. H. In addition, the server log entries establish numerous instances of those IP addresses viewing the "Terms of Use" on CollegeSource's website. Novak Decl., ¶34 and Ex. L.

C.    **CollegeSource Recently Uncovered Defendant's Non-Production And/Or Deletion Of Tens Of Thousands Of Files From Its Apple Server**

On or around August 22, 2010, Mr. Novak experimented with a newly acquired search utility called Agent Ransack[8] to conduct a search for the keyword "collegesource" in the Apple Server defendant produced in discovery (ACA - PA 3502). Novak Decl., ¶28 The search located the keyword "collegesource" multiple times in a system "hidden" file named "$UsnJrnl•$J" on the Apple Server (ACA-PA 3502). Novak Decl   The previous searches conducted by Mr. Novak utilizing the Windows Explorer search  utility had not located the "$UsnJrnl•$J" file.  Novak Decl., ¶4-5.

The native file "$UsnJrnl•$J" produced in discovery by AcademyOne on its Apple Server (ACA-PA3502) is a "hidden" Windows Change Journal file, which provides a log of all changes made to files and folders on its hard drive(s).  In other words, the file lists all files and folders that *are* currently on the Apple Server hard drive(s), as well as files and folders that *were* deleted.  As explained by Microsoft: "As files, directories, and other NTFS file system objects are added, deleted, and modified, the NTFS file system enters change journal records in streams, one for each volume on the computer."  Novak Decl, Ex. J.

Using an extraction utility, Mr. Novak had the contents of the change journal file "$UsnJrnl•$J" extracted to an Excel spreadsheet, to make review easier and faster.  Mr. Novak compared the files that the "$UsnJrnl•$J" change journal indicated had existed at some point in time on the *original* Apple Server to the inventory of files he created from the Apple Server produced in discovery (ACA-PA 3502).  Novak Decl., ¶31.  Mr. Novak also compared the files listed in the "$UsnJrnl•$J" change journal to the inventory of files produced by defendant.  From these

---

[8] Agent Ransack's website at www.mythicsoft.com/page.aspx?page=home&type= agentransack makes the representation 'Finding files that other search engines miss." Novak Dec. Ex. __ (Ransack).

comparisons, Mr. Novak created a list of **88,662 native files that were not produced** on the Apple

Server defendant produced in discovery (ACA-PA 3502) and were reflected on the "$UsnJrnl•$J"

change journal as having existed.  Novak Decl., ¶31.   With respect to these unproduced native files,

Mr. Novak included data from the Change Journal for records of those files being created, overwritten

or deleted.   According to the change journal, approximately **14,024 native files were deleted** on

February 14, 2011.[9]  The files not produced and/or deleted include  the following files that the Change

Journal indicates were among the over 14,000 files *deleted* Monday, February 14, 2011:[10]

    "B20910_Institutions_With_CollegeSource_Source.xlsx"

    "CS dirty data.xlsx."

A more expansive list of highly provocative file names is submitted concurrently along with a listing

of all 88,662 files not produced and/or deleted.  Novak Decl., Ex. K.

\\

\\

\\

---

[9]  Defendant's conduct in deleting thousands of files from its Apple Server appears to violate this Court's prior August 4, 2010 Order that provides, in part: "It is FURTHER ORDERED that **there shall be no destruction of any documents or data, by either party, that may be related in any way to the subject matter of this litigation**." [Docket No. 29, at pdf 1 (emphasis added)]

[10]  In connection with its opposition to CollegeSource's motion to compel, defendant represented, through the declaration of its counsel, that it "produced all but a handful of clearly irrelevant files" from its Apple Server. *See* [Docket 147-2, ¶3].  As noted above, Defendant failed to produce far more than a "handful" of files – the actual number is over 88,000.  Given the names of some of these files, it is highly unlikely that they are "irrelevant."  Defendant also represented in its opposition that it "has not withheld any documents on the basis of privilege." [Docket No.154].  CollegeSource respectfully requests that the entire mirrored Apple Server be provided to it.  CollegeSource also requests an *in camera* review of any deleted documents defendant belatedly identifies now as being subject to privilege.

## III.    GOVERNING STANDARDS

### A.    The Court Has The Inherent Discretion To Allow CollegeSource To Supplement Its Opposition

"Though none of the Federal Rules of Civil Procedure speaks directly to the question of amendment of motions, the proposition that '[a] motion is subject to 'timely' amendment" is widely shared.'" *Martinez v. Quality Value Convenience, Inc.*, 63 F. Supp. 2d 651, 655 (E.D. Pa. 1999), *quoting* 5 Wright and Miller § 1194 (1990); *Aames Funding Corp. v. Sharpe*, 2004 U.S. Dist. LEXIS 21697 at *6 n1 (E.D. Pa. 2004) (same), *citing Martinez*.   In *Martinez*, the Eastern District of Pennsylvania allowed a party leave to file a supplemental memorandum in support of its motion for summary judgment over five (5) months after the dispositive motion deadline had passed, despite the fact that the Court found the supplemental memorandum "to be an attempt to file a third summary judgment motion after the dispositive motion deadline had passed." *Martinez*, 63 F. Supp. 2d at 655.

Even where a request for permission to supplement a motion is made after the motion has been fully briefed, the Court should exercise its discretion "in favor of granting such permission, lest the mechanics of motion practice be elevated over substance." *In re Repetitive Stress Injury Litig.*, 165 F.R.D. 367, 371 (E.D.N.Y. 1996);  *See Aames*, 2004 U.S. Dist. LEXIS 21697 at *6 n1 (same), *quoting In re Repetitive Stress Injury Litig.*

> Occasionally, a party may request permission to submit materials after a motion has been fully briefed and submitted, but prior to the Court's decision on such motion. For example, a party may wish to submit materials that could not, by due diligence, have been obtained earlier. Sometimes, inadvertence is cited as the reason that relevant material was not provided to the Court in a timely fashion. Or, a party may request permission to supplement its submissions if it reasonably relied on the law as it existed at the time of filing, yet a later decision changed such law.
>
> In any event, the decision to permit a party to file supplemental submissions is within the Court's discretion. *See, e.g.*, 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1193, at 50 (1990) (indicating that the court has the discretion to permit a party to amend its motion).  As a general proposition, that discretion should

be exercised in favor of granting such permission, lest the mechanics of motion practice be elevated over substance.

*In re Repetitive Stress Injury Litig.*, 165 F.R.D. at 371.

The Court's inherent discretion to allow a party to supplement its motion or opposition is *independent* of the Court's authority to enlarge time under Fed. Rul. Civ. Proc. 6(b) for "excusable neglect."

A review of applicable precedent, however, illustrates that **absent serious, actual prejudice to another party, district courts, often with circuit approval, have exercised the inherent authority to manage their docket so as to grant enlargements of time even when such extensions fall outside the literal scope of Rule 6(b)**. *See Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642 (5th Cir. 2002) (affirming, over a Rule 6(b) objection, district court's sua sponte decision to permit litigant to file Rule 54 motion for costs outside the time provided for in the Federal Rules of Civil Procure and the district court's local rules); *Yesudian v. Howard Univ.*, 348 U.S. App. D.C. 145, 270 F.3d 969, 971 (D.C. Cir. 2001) (affirming district court's enlargement of time for litigant to make a filing notwithstanding lack of any explanation respecting "excusable neglect" or a motion specifically requesting such relief); *Tran v. Captain Glyn, Inc.*, 909 F. Supp. 727, 731 (D. Hawaii 1995) (permitting litigant to file late cross-motion for summary judgment and opposition to opponent's motion for summary judgment); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) [*8] (district court did not err in accepting motion for summary judgment one day late); *cf. Crutcher v. Coleman*, 205 F.R.D. 581, 586 (D. Kan. 2001) (allowing defendant to file answer six months after original deadline, notwithstanding her failure to provide "an adequate reason [,]" where failure caused no prejudice to the plaintiff); *E.E.O.C. v. TruGreen Ltd. P'ship*, 185 F.R.D. 552, 554 (W.D. Wisc. 1998) (not error for magistrate to sua sponte accept late-filed motion for protective order). **Fn 1** *But see Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 558 (7th Cir. 1996) (holding that district court committed reversible error when, contrary to Rule 6(b), it sua sponte enlarged the time for defendants to respond to the complaint and the enlargement "seriously prejudiced [the pro se prisoner-plaintiff's] prosecution of his case"); *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 642-43 (M.D. Fla. 2002) (refusing to grant enlargement of time where litigant failed to explain reasons for neglect; explaining, "A contrary conclusion necessarily implies that a court may excuse one party's omission to the material [*9] detriment of another party without understanding the conduct that occasioned the omission." (emphasis supplied)).

**Fn 1**.       Indeed, **the Supreme Court has itself appeared to acknowledge the discretion of a district court to enlarge a response period even in circumstances where Rule 6(b) does not seem to expressly contemplate such relief.** In *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), the Court rejected an argument that the district court had erred in refusing to *sua sponte* extend the time within which a party was permitted to submit affidavits. The Court began by enumerating the various reasons such an extension would have been inappropriate under Rule 6(b)(2), such as the lack of a motion and a nonexistent showing of excusable neglect. *See* 497 U.S. at 896-97. Notwithstanding its identification of these manifest failings, the Court went on to indulge the possibility that the district court might yet have allowed the extension of time, remarking: "Perhaps it is true that the District Court could have overcome all the obstacles we have described-apparent lack of a motion, of a showing, and of excusable neglect-to admit the affidavits at issue here. But the proposition that it was compelled to receive them-that it was an abuse of discretion to reject them-cannot be accepted." 497 U.S. at 898. That indulgence suggests to this Court, especially in light of the post -- *Lujan* authorities cited *supra*, that the Federal Rules did not divest it of all authority to grant the challenged extension.

*Godoy v. Office of Bar Admissions*, 2006 U.S. Dist. LEXIS 50654 at *7-*9 (N.D. Ga. 2006) (emphasis added).

In fact, in *King v. Township of E. Lampeter*, 17 F. Supp. 2d 394 (E.D. Pa. 1998), the Eastern District of Pennsylvania, after discussing the numerous ways in which the moving party had failed to show "excusable neglect" under Rule 6(b), nevertheless denied a defendant's motion to strike the plaintiff's late-filed opposition to the defendant's motion for summary judgment, to "to prevent any appearance of injustice to the Plaintiffs."

We are troubled by the Plaintiffs' attempt to brush aside their repeated violations of the Local and Federal Rules of Civil Procedure and by counsel's failure to cite any relevant statutes or case law in support of their motion. The Plaintiffs' rhetoric seems to suggest that the Plaintiffs should be allowed to file whatever they want, whenever they want. Nevertheless, to prevent any appearance of injustice to the Plaintiffs, we will exercise our discretion to allow their submissions and dismiss the Defendants' motion to strike.

*King*, 17 F. Supp. 2d at 407.

Numerous courts in this Circuit have exercised their inherent discretion to allow a party to supplement the summary judgment record, without reference to Rule 6(b) or any other rule of

procedure. *See SRI Int'l, Inc. v. Symantec Corp.*, 2012 U.S. Dist. LEXIS 45348 at *16 fn 11 (D. Del. 2012) (granting motion for leave to file supplemental brief in support of motion for summary judgment); *In re Asbestos Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 9545 at *9-*14 (E.D. Pa. 2011) (granting motion for leave to supplement record in support of response to summary judgment and motion for leave to file supplemental declaration, filed **after oral argument** on motion for summary judgment); *Lytle v. Capital Area Intermediate Unit*, 2009 U.S. Dist. LEXIS 48985 at *41 (M.D. Pa. 2009) (granting motion for leave to file supplemental memorandum and affidavit in connection with motion for summary judgment).

As discussed below, the Court should exercise its broad discretion to allow CollegeSource to supplement its opposition to defendant's motion for summary judgment – both under its inherent authority and under Rule 6(b). *See* §§IV.A-D.

### B.     The Court Has The Discretion To Allow CollegeSource To Supplement Its Opposition And Serve Discovery, Pursuant To F.R.C.P. 6(b)(1)(B)

Rule 6(b)(1)(B) provides that "when an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. Rul. Civ. Proc. 6(b)(1)(B). Whether to grant an extension under Rule 6 is entrusted to the sound discretion of the Court. *See Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010) ("The district court is afforded great leeway in granting or refusing enlargements"), *quoting Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 583-584 (1st Cir. 1994).

"The court is expected to use its discretion to extend time periods in a manner that will 'secure the just, speedy, and inexpensive determination of every action and proceeding,' as stated by Rule 1." 1 *Moore's Federal Practice*, §6.06[1][a] (Matthew Bender 3d. Ed. 2012), *citing*, e.g., *Baden v Craig-Hallum, Inc.*, 115 FRD 582, 584-585 (D. Minn. 1987); *See Nesselrotte v. Allegheny Energy,*

*Inc.*, 2009 U.S. Dist. LEXIS 8232 at *37 (E.D. Pa. 2009) (analyzing excusable neglect under Rule 6(b), and noting "the spirit of the Federal Rules of Civil Procedure, which **favors decisions on the merits, not technicalities**"), *citing Foman v. Davis*, 371 U.S. 178,181-82 (1962) (emphasis added). The Court abuses its discretion under Rule 6(b) if its procedures result "in actual and substantial prejudice to the complaining litigant." *Drippe*, 604 F.3d at 783, *quoting In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817-818 (3d Cir. 1982).

"[T]he determination of whether a party's neglect is excusable has been held to be an equitable determination, in which [courts] are to take into account all the relevant circumstances surrounding a party's failure to file timely." *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 153 (3d Cir. 2005). A showing of "excusable neglect" under Rule 6(b) requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995); *See, e.g., Rice v. Sniezek*, 2012 U.S. Dist. LEXIS 131930 at *2-*3 n3 (E.D. Pa. 2012).

In *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993) the Supreme Court held "it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. Instead, the Court confirmed the intent of the Legislature that "excusable neglect" encompasses "late filings caused by inadvertence, mistake, or carelessness." *Id*. at 388. The Court set forth numerous factors for a district court to consider, which were summarized by the Third Circuit in *Drippe*:

> Under *Pioneer*, the excusable neglect inquiry must consider "all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.; see also In re O'Brien Envtl. Energy, Inc.*,

188 F.3d 116, 125 n.7 (3d Cir. 1999) (holding that *Pioneer* factors apply to all excusable neglect inquiries mandated under the Federal Rules of Civil Procedure).

*Drippe*, 604 F.3d at 785.

Numerous courts have exercised discretion under Rule 6(b) to allow a party to submit summary judgment papers and/or supplements after the filing deadline. *See, e.g., Nesselrotte*, 2009 U.S. Dist. LEXIS 8232 at *37 (E.D. Pa. 2009) (granting motion to supplement opposition papers filed after party moving for summary judgment had filed reply papers); *United States Bancorp Equip. Fin., Inc. v. DCC II Aircraft Corp.*, 2006 U.S. Dist. LEXIS 6434 at *2 (E.D. Pa. 2006) (noting that the Court had granted defendant's motion for leave to file a supplemental response to plaintiff's motion for summary judgment filed **over two and one half months** after plaintiff had filed a reply in support of its motion for summary judgment); *Bautista v. Clemson Univ.*, 2008 U.S. Dist. LEXIS 41513 at *2-*4 (D.S.C. 2008) (granting plaintiff leave to supplement response to defendant's motion for summary judgment to include evidence uncovered two weeks after defendant filed reply in support of its motion for summary judgment); *See also GNB, Inc. v. Tropex, Inc.*, 1988 U.S. App. LEXIS 19524 at *4-*7 (4th Cir. 1988) (holding that district court abused its discretion by denying a defendant's motion to file late opposition to the plaintiff's motion for summary judgment).

As discussed below, the relevant equities and circumstances compel the Court to exercise its discretion, under Rule 6(b), to allow CollegeSource to supplement its opposition to defendant's motion for summary judgment and serve limited discovery. *See* §§IV.A-E.

**C.    The Court May Allow CollegeSource To Supplement Its Opposition And Serve Discovery If The Court Finds That CollegeSource Has Not Addressed Defendant's Assertions Of Fact, Pursuant To F.R.C.P. 56(e)**

Under Rule 56, the Court has the discretion to permit CollegeSource to supplement its opposition and serve discovery to properly address the facts set forth in defendant's motion for

summary judgment.  Fed. Rul. Civ. Proc. 56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>> (1) **give an opportunity to properly support or address the fact**;
>> (2) consider the fact undisputed for purposes of the motion;
>> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>> (4) **issue any other appropriate order**.

(emphasis added).  As Rule 56(e) contemplates situations where a party has not addressed another party's assertions of fact, it necessarily is not affected by the fact that a motion for summary judgment may have been fully briefed and argued.

As explained below, CollegeSource must be allowed to supplement its opposition and obtain additional discovery in order to fully address the facts set forth in defendant's motion for summary judgment, including, but not limited to, defendant's assertions that it never knowingly accessed CollegeSource's servers without authorization. *See* §§ IV.D-E.  In the event the Court is inclined to find that CollegeSource has not properly addressed any of the facts set forth by defendant in support of its motion for summary judgment, CollegeSource respectfully requests the opportunity to file a supplemental opposition and serve additional discovery under Rule 56(e).

### D. The Court Has The Discretion To Modify Its Scheduling Order To Reopen Discovery And Allow CollegeSource To Serve Limited Discovery, Pursuant To F.R.C.P. 16(b)

"The purpose of discovery is 'for the parties to obtain **the fullest possible knowledge of the issues and facts before trial**.'" *AAA Life Ins. v. Kneavel*, 2012 U.S. Dist. LEXIS 17745 (M.D. Pa. 2012), *quoting Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (emphasis added).  To this end, Rule 16(b)(4) provides that a scheduling order may be modified "for good cause shown and with the judge's consent." Fed. Rul. Civ. Proc. 16(b)(4).

> To establish good cause in this context, the party seeking the extension must show that the deadlines set forth in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) Advisory Committee Notes to 1983 Amendments; *see also Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990); *McElyea v. Navistar Int'l Transp.* Corp., 788 F. Supp. 1366, 1371 (E.D. Pa. 1991), *aff'd without opinion*, 950 F.2d 723 (3d Cir. 1991). Good cause may also be satisfied if the movant shows that the inability to comply with a scheduling order is **"'due to any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'"** *Newton v. Dana Corp., Parish Div.*, Civ. No. 94-4958, 1995 U.S. Dist. LEXIS 8473, at *3 (E.D. Pa. 1995) (*quoting Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

*Williams v. Sullivan*, 2011 U.S. Dist. LEXIS 56414 at *14 (D.N.J. 2011) (emphasis added). While the scope and conduct of discovery are generally entrusted to the discretion of the district court, an abuse of that discretion occurs when "there has been an interference with a 'substantial right'" or the court's orders result "in fundamental unfairness in the trial of the case." *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d. Cir. 1983) (citations omitted), *cert. denied*, 467 U.S. 1259 (1984).

As explained below, CollegeSource was not reasonably able to propound the discovery it now seeks and, in any event, its failure to do so was the result of excusable neglect. *See* §§IV.A-E. As part of its showing of excusable neglect, CollegeSource has identified the particular information sought [§IV.E], explained its relevance to defendant's motion for summary judgment and this case in general [§IV.D; *See also* CollegeSource's accompanying Supplemental Opposition to Defendant's Motion for Summary Judgment], and demonstrated why it has not previously been obtained [§§IV.A]. Accordingly, this Court should exercise its discretion to reopen discovery to allow CollegeSource to serve the limited identified discovery.

\\

\\

\\

---

IV.    THE RELEVANT CIRCUMSTANCES REQUIRE THAT COLLEGESOURCE BE
        ALLOWED TO SUPPLEMENT ITS OPPOSITION AND SERVE DISCOVERY

    A.    CollegeSource Had A Reasonable Basis For Not Filing Its Opposition Sooner
          Or Requesting The Additional Discovery

        1.    CollegeSource Relied Upon Defendant's Representations And
              Response To This Court's Orders

As set forth in detail above, CollegeSource relied upon defendant's discovery responses and

representations to the CollegeSource and the Court in believing that defendant did not have the

requested IP address information available to it and believing that defendant's production of its Apple

Server was complete. CollegeSource only recently uncovered the apparent falsity of defendant's

representations.

Courts have expressly held that "excusable neglect" includes the missing of a deadline as a

result of "such things as misrepresentations by judicial officers." *Abuelyaman v. Ill. State Univ.*, 667

F.3d 800, 808 (7th Cir. 2011), *citing Prizevoits v. Indiana Bell Tel. Co.*, 133-134 (7th Cir. 1996,

Posner, J.); *See Baden v Craig-Hallum, Inc.*, 115 FRD 582, 585-587 (D. Minn. 1987) ("excusable

neglect" and "good cause" found, in part, due to reliance upon misleading statement by opposing

counsel at hearing that "his firm represented both defendants"); *See also In re Cendant Corp. Prides

Litig.*, 98 F. Supp. 2d 602 (D.N.J. 2000) (reliance upon misrepresentations by employee supports

"excusable neglect").

In the analogous context of obtaining an extension of time to serve a summons under Fed. Rul.

Civ. Proc. 4,[11] numerous courts have held misleading statements or conduct by the opposing counsel

---

[11]    In the context of Rule 4, "[t]he Third Circuit has defined 'good cause' as being
tantamount to 'excusable neglect' under Fed. R. Civ. P. 6(b)." *Cohen v. Stokes Elec. Supply (In
re SubMicron Sys.)*, 2004 U.S. Dist. LEXIS 7080 at *8 (D. Del. 2004), *citing Petrucelli v.
Bohringer & Ratzinger*, 46 F.3d 1298, 1307, n.11 (3d Cir. 1995) and *Braxton v. United States*,
817 F.2d 238, 241 (3d Cir. 1987).

or party to be sufficient to show "good cause" for obtaining an extension. See, e.g., *Baden*, 115 FRD at 585-587, *supra*; *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104, 105 (E.D. Mich. 1987) (granting extension of time due to misleading conduct by opposing counsel that "lulled" plaintiff into believing that process had been served); *See also Hilmon Co. v. Hyatt Int'l*, 899 F.2d 250, 252 (3d Cir. 1990) ("the legislative history provides only one example where an extension for good cause would be permissible, specifically where the defendant intentionally evades service").

As noted, at its person most knowledgeable deposition, defendant did not identify its IP address or the IP addresses used by its China Team. Quinn Decl., Ex. B (PMK Notice) and Ex. C (Moldoff 10/19/11 Depo.), at p. 9:19-17:7.  In response to CollegeSource's successful motion to compel, defendant filed a supplemental response to Request No. 23 indicating, *inter alia*, "AcademyOne never had such [IP address] information in its possession" and "AcademyOne has no information regarding [the China Team]'s computers, locations, or how [the China Team] connected to the internet." [Docket No. 157 (Defendant's Supplemental Response), at pdf 11-12]

Had defendant provided the IP address information either at defendant's deposition, in response to CollegeSource's discovery requests, or in response to the Court's Order on CollegeSource's motion to compel, CollegeSource could have timely submitted the new evidence that is subject to this motion when it filed its original summary judgment opposition papers on April 6, 2012 (based upon the rapid analysis by CollegeSource once it uncovered IP address information on July 26, 2012).  Indeed, CollegeSource may have filed its own motion for summary judgment.  CollegeSource also could have issued timely follow-up discovery.

Regarding the non-produced or deleted files from the Apple Server, in connection with its opposition to CollegeSource's motion to compel, defendant represented, through the declaration of its counsel, that it "produced all but a handful of clearly irrelevant files" from its Apple Server. *See*

[Docket 147-2, ¶3]. Defendant also represented that it "has not withheld any documents on the basis of privilege." [Docket No.154]. Again, if defendant had been forthcoming, CollegeSource would have been able to timely request follow-up discovery.

In short, defendant cannot fault CollegeSource for recently uncovering information that defendant should have provided pursuant to discovery and its duty of candor to the Court.

### 2. CollegeSource Had No Reason To Believe That Its Search Utility Was Not Reaching All Of The Data Produced By Defendant

As discussed in detail above, until CollegeSource happened across the IP address for the China Team in the extremely voluminous data dumped by defendant, CollegeSource was unaware that the electronic search utilities it had been using were not adequately searching the native files.

"Excusable neglect" includes "late filings caused by inadvertence, mistake, or carelessness."

*Pioneer*, 507 U.S. at 388.

> The United States Court of Appeals for the Third Circuit has noted that when the moving party has claimed excusable neglect based on inadvertence, the district courts may also look to whether: 1) the inadvertence reflected professional incompetence; 2) it is an excuse incapable of verification by the court; and 3) the reason demonstrates a complete lack of diligence. *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 233 F.3d 188, 196, n. 8 (3d Cir. 2000) (*citing Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988)).

*Nesselrotte*, 2009 U.S. Dist. LEXIS 8232 at *32.

In the instant case, there was no "professional incompetence" by CollegeSource's attorneys. CollegeSource's attorneys timely filed summary judgment opposition papers. It is not professional incompetence to use the Windows Explorer search utility when keyword searches yield results and there was no warning that any files were not being searched. Second, this Court can "verify" for itself that the Windows Explorer keyword searches of "collegesource" did not yield the Change Journal system file in the results. Novak Decl., ¶5 and Ex. A   This Court can also "verify" for itself that the

Windows Explorer keyword searches of "china " did not yield defendant's log files in the results. ¶6 and Ex. B    Third, CollegeSource did not demonstrate a "complete lack of diligence."   Rather, CollegeSource diligently reviewed the Apple Server (ACA-PA 2502), took defendant's deposition and even successfuly brought a motion to compel.  Quinn Decl. , ¶¶2-4.

### 3. CollegeSource Required Time To Examine The 248,983 Native Files Contained in the 284 GB Hard Drive Dumped Upon It By Defendant

Defendant's Apple Server (ACA-PA 3502) contains 248,983 native files comprising 284 GB of data.  Defendant represented to this Court it has "produced 350 gigabytes of data in electronic form and more than 50,000 pages of documents." [Docket No. 105-1 (Landau Decl.), ¶6)]   CollegeSource should be excused or not faulted for not uncovering sooner the additional highly relevant evidence it seeks to present to this Court in opposition to defendant's motion for summary judgment.  *See B&K Mech., Inc. v. Wiese*, 2005 U.S. Dist. LEXIS 21005 at *11 (D. Kan. 2005) ("plaintiff's proffered reason for the delay, i.e. the necessity of reviewing voluminous discovery before being able to proceed, is reasonable, particularly in light of the brevity of the delay").

In its opposition to CollegeSource's motion to compel, defendant's counsel admitted: "Instead of picking and choosing files from the server, AcademyOne produced all but a handful of clearly irrelevant files, comprising approximately 284 gigabytes of data" and "AcademyOne's productions yielded far more than what CollegeSource actually sought." [Docket 147 at 3-4].   Defendant's production of more documents than requested was improper, and should not be rewarded through the denial of CollegeSource's immediate motion. *See SEC v. Collins & Aikman Corp.*, 256 FRD 403, 410 (S.D.N.Y. 2009) (Rule 34 "prohibits simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought"); *Pass & Seymour v. Hubbell, Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008).

**B.    CollegeSource Acted Diligently And In Good Faith**

Under the circumstances, CollegeSource's good faith cannot be disputed.  As a preliminary matter, CollegeSource has litigated this case diligently and met all deadlines herein.  Quinn Decl., ¶10. *See Florer v. Elec. Data Sys. Corp.*, 2004 U.S. Dist. LEXIS 13018 at *4 (N.D. Tex. 2004) (allowing late filing because, *inter alia*, "Defendant has met all other deadlines in the instant case").

Furthermore, CollegeSource acted in good faith by expecting that the Court's order to not destroy documents would be followed and that defendant would produce any IP address information it had, as ordered in discovery. Quinn Decl., ¶11.   *See B&K Mech., Inc. v. Wiese*, 2005 U.S. Dist. LEXIS 21005 at *11-*12 (D. Kan. 2005) ("there is nothing in the record before the court to suggest that plaintiff delayed the filing due to any bad faith motive, and, in fact, the opposite appears to be the case since the delay is in part attributable to plaintiff's good faith expectation that defendant Wiese's supplemental response would include the information at issue").

Prior to filing CollegeSource's summary judgment opposition, CollegeSource had no idea that that defendant's logs contained references to defendant's China Team IP addresses and that defendant produced a hidden "change journal" file that contained references to not produced and/or deleted files. Quinn Decl. ¶12.  In *Bautista v. Clemson Univ.*, 2008 U.S. Dist. LEXIS 41513 (D.S.C. 2008), the plaintiff uncovered additional evidence after the defendant had filed a reply in support of its motion for summary judgment.

> Approximately two weeks after Defendant filed its Reply, Plaintiff Bautista came into contact with the former Secretary to Clemson University's Board of Trustees and Assistant to the President, C. Eugene Troutman, III. After their meeting, Mr. Troutman provided Plaintiff with several documents and gave her certain information about the handling of her case which she seeks to add to the record  [*3] to be considered in connection with Defendant's motion.

> In addition, at about the same time, while searching her files for something unrelated to this case, she discovered the minutes of a

> Language Department meeting where she had not been present that contains policies about the responsibility for substitute teachers that appear to be inconsistent with Defendant's evidence and assertions. She was unaware of the existence of this document until its recent discovery and seeks to add it to the record.

*Bautista*, 2008 U.S. Dist. LEXIS 41513 at *2-*3.  The plaintiff represented that "prior to her meeting with Mr. Troutman, neither she nor her counsel knew that Mr. Troutman had evidence relevant to her case." *Id*. at *3.  Over the defendant's objection, the court found that plaintiff had shown "excusable neglect" and allowed plaintiff to amend her opposition. *Id*. at *4.

On August 22, 2012, CollegeSource notified defendant's counsel and the Court of the newly uncovered evidece.  Quinn Decl., Ex. D.  On August 23, 2012, CollegeSource made its server logs immediately available to defendant's expert.  Defendant declined.[12]  Quinn Decl., ¶13.  *See Nesselrotte*, 2009 U.S. Dist. LEXIS 8232 at *35 (noting that plaintiff and plaintiff's counsel had not acted with a complete lack of diligence "given that they acted quickly to rectify the problem")

### C. The Delay In CollegeSource's Opposition And Discovery Will Not Negatively Impact These Proceedings

The Court's consideration of CollegeSource's newly uncovered evidence will positively, not negatively, impact these proceedings.  The newly uncovered evidence is highly relevant.  Defendant can respond to the new evidence regarding facts it should have admitted from the outset.  The Court has not ruled upon the summary judgment motion.  *See B&K Mech., Inc. v. Wiese*, 2005 U.S. Dist. LEXIS 21005 at *11 (D. Kan. 2005) (plaintiff's delay in filing the instant motion was minimal and has not impacted subsequent proceedings in the case").  Furthermore, as no trial date has been set, the supplemental opposition and discovery will not delay trial.  *See AAA Life Ins. v. Kneavel*, 2012 U.S. Dist. LEXIS 17745 at *4 (M.D. Pa. 2012) (granting motion to reopen discovery because, *inter alia*,

---

[12]  Upon uncovering the IP addresses of defendant and its China Team, CollegeSource's server logs became relevant.

"reopening discovery for only twenty (20) days will not delay the trial currently scheduled. . . .").

**D.   CollegeSource Will Be Substantially Prejudiced If It Is Not Allowed To Supplement Its Summary Judgment Opposition And Obtain Additional Discovery**

CollegeSource will be substantially prejudiced if it is not allowed to supplement its summary judgment opposition and reopen discovery.   As explained in CollegeSource's accompanying Supplemental Opposition to Defendant's Motion for Summary Judgment, incorporated herein by reference, the newly uncovered evidence is highly relevant on CollegeSource's data misappropriation claims for breach of contract, unjust enrichment, and violation of the Computer Fraud and Abuse Act. CollegeSource should be able to follow up on this new evidence through discovery. *See Nesselrotte*, 2009 U.S. Dist. LEXIS 8232 at *37 (analyzing excusable neglect under Rule 6(b), and noting "the spirit of the Federal Rules of Civil Procedure, which favors decisions on the merits, not technicalities"), *citing Foman*, 371 U.S. at 181-82.

Courts have a strong preference for resolving disputes on the merits rather than on technical or procedural grounds. *See  United States v. $39,480.00 in United States Currency*, 190 F. Supp. 2d 929, 933 (W.D. Tex. 2002) (Tardiness of complaint for forfeiture excused, "the Court combines its consideration of the above factors with its strong preference for resolving disputes on the merits when possible, instead of determining the outcome solely on technical or procedural grounds")

**E.   Discovery Should Be Reopened to Follow Up On The Newly Uncovered Evidence**

Discovery should be reopened to allow CollegeSource to follow up on the newly uncovered evidence.   Specifically, additional discovery is requested on the issues of: (1) Access to CollegeSource's server by defendant, defendant's China contractor and/or defendant's counsel through the use of third-party usernames and/or passwords, including, but not limited to, those of Bellmore

Memorial Library and Santa Fe College; and (2) files deleted and/or not produced from defendant's "Apple Server," which was produced in incomplete form as ACA-PA 3502.

The questions to be answered by this discovery include, but are not necessarily limited to: How does defendant contend it obtained the username/password of two of CollegeSource's subscribers? Does it have other username/password information? Does it dispute any of newly uncovered IP address information? What are the contents of the deleted files? Did defendant's backup tapes preserve the deleted files? What were the circumstances that it deleted over 14,000 files on February 14, 2011? Who was involved?

CollegeSource requires the foregoing additional discovery to properly prepare its case for trial.

## V.    CONCLUSION

Based upon the foregoing, CollegeSource respectfully requests this Court to GRANT CollegeSource's Motion for Leave to Supplement Opposition to Defendant's Motion for Summary Judgment and Conduct Additional Discovery. The Court may also enter defendant's default on CollegeSource's claims regarding defendant's misappropriation of its data.

Dated: September 21, 2012

Respectfully Submitted,

William F. Woods, Esquire
750 State Street, Suite 310
San Diego, California 92101

LAW OFFICES OF DARREN J. QUINN
Darren J. Quinn
Alexander E. Papaefthimiou

CONRAD O'BRIEN PC
Frank R. Emmerich Jr.
1515 Market Street - 16th Floor
Philadelphia, Pennsylvania
Telephone: (215) 864-8086
Fax: (215) 864-9620

/s/ Darren J. Quinn
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, California 92014
Fax: (858) 509-9401

*Attorneys for Plaintiff CollegeSource, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing were electronically filed onSeptember 21, 2012 pursuant to the Court's electronic court filing system, and that the documents are available for downloading and viewing from the electronic court filing system.

./s/ Darren J. Quinn_____

Darren J. Quinn
